[Cite as *Davis v. Wooster Orthopaedics & Sports Medicine, Inc.*, 193 Ohio App.3d 581, 2011-Ohio-3199.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

DAVIS, Admr.,

      Appellee,

      v.

WOOSTER ORTHOPAEDICS &
SPORTS MEDICINE, INC., et al.,

      Appellants.

C.A. No.     25337

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 07 08 5379

APPEARANCES:

Irene C. Keyse-Walker and Michael J. Ruttinger, for appellants.

Steven P. Okey, for appellee.

DECISION AND JOURNAL ENTRY

Dated: June 29, 2011

DICKINSON, Judge.

INTRODUCTION

{¶ 1} Barbara Davis was 49 years old when she died following back surgery on July 23, 2004. Her husband, Leroy Davis, filed a wrongful-death action against her orthopaedic surgeon, Michael S. Knapic, M.D. and his practice group, Wooster Orthopaedics & Sports Medicine, Inc. Mr. Davis alleged that Dr. Knapic had negligently performed a lumbar microdiscectomy by completely severing Mrs. Davis's left common iliac artery and lacerating her iliac vein during the procedure and failing to timely diagnose and treat the medical condition that arose thereafter.

At trial, the jury found against Knapic and awarded $3 million in damages. Knapic and his practice group have appealed. This court affirms the judgment because (1) the trial court did not admit any evidence of sympathy or apology in violation of R.C. 2317.43, (2) the trial court exercised proper discretion in weighing the probative value of the autopsy photograph and related medical testimony against the danger of unfair prejudice under Evid.R. 403(A), and (3) the jury instruction regarding insurance was not improper.

## THE APOLOGY STATUTE

{¶ 2} Knapic and his practice group's first assignment of error is that the trial court incorrectly admitted apology evidence in violation of R.C. 2317.43. Mr. Davis argues that the trial court did not admit any apology evidence at trial and that R.C. 2317.43 does not prohibit the use of statements of fault, responsibility, or liability as compared to statements of sympathy or condolence. At trial, Mrs. Davis's husband and daughter testified that after the surgery, Knapic told them that he had nicked an artery and that he took full responsibility for it. The jury did not hear any testimony that Knapic had told them he was sorry.

{¶ 3} Interpretation of a statute is a question of law that this court reviews de novo. *State v. Consilio*, 114 Ohio St.3d 295, 2007-Ohio-4163, at ¶ 8. "The primary goal of statutory construction is to ascertain and give effect to the legislature's intent in enacting the statute." *State v. Lowe*, 112 Ohio St.3d 507, 2007-Ohio-606, at ¶ 9. To determine legislative intent, a court will first look to the plain language of the statute itself. Id., citing *State ex rel. Burrows v. Indus. Comm.* (1997), 78 Ohio St.3d 78, 81. "Words and phrases [must] be read in context and construed according to the rules of grammar and common usage." R.C. 1.42.

{¶ 4} Under R.C. 2317.43(A), "[i]n any civil action brought by an alleged victim of an unanticipated outcome of medical care * .*.*, any and all statements, affirmations, gestures, or

conduct expressing apology, sympathy, commiseration, condolence, compassion, or a general sense of benevolence that are made by a health care provider or an employee of a health care provider to the alleged victim, a relative of the alleged victim, or a representative of the alleged victim, and that relate to the discomfort, pain, suffering, injury, or death of the alleged victim as the result of the unanticipated outcome of medical care are inadmissible as evidence of an admission of liability or as evidence of an admission against interest." The parties agree that the statute prohibits the admission of a health-care professional's statement of sympathy in a medical-malpractice case, but disagree regarding whether it also prohibits statements admitting liability or fault. This is an issue of first impression in Ohio.

{¶ 5} Knapic argues that drawing a distinction between an acknowledgment of fault and an expression of sympathy violates the intent of the statute because the word "apology," as commonly defined, includes an expression of fault, admission of error, or expression of regret for an offense or failure. Knapic also argues that the statutory intent behind R.C. 2317.43 is to avoid the obvious detriment to the physician-patient relationship that can follow an adverse medical outcome, especially if the doctor refuses to show some compassion and speak to the patient or the family. According to Mr. Davis, however, a direct admission of fault and responsibility is not what is intended by the plain and unambiguous words of the statute. See R.C. 2317.43(A).

{¶ 6} Among the 36 states that have adopted similar laws, the majority explicitly distinguish between statements of sympathy and admissions of fault or liability. Under California's apology law, for example, only "[t]he portion of statements * * * or benevolent gestures expressing sympathy or a general sense of benevolence relating to the pain, suffering, or death of a person involved in an accident * * * shall be inadmissible as evidence of an admission

of liability in a civil action. A statement of fault * * * which is part of, or in addition to, any of the above shall not be inadmissible pursuant to this Section." Cal.Evid.Code 1160(a) (West 2011). Seventeen of the states that have explicitly distinguished between expressions of sympathy and admissions of fault have chosen to admit expressions of fault while excluding from evidence any part of a statement that expresses sympathy. See, e.g., La.Rev.Stat.Ann. 13:3715.5 (2010) ("Any communication * * * expressing * * * apology, regret, grief, sympathy, commiseration, condolence, compassion, or a general sense of benevolence * * * shall not be admissible[.]* * * A statement of fault, however, which is part of, or in addition to, any such communication shall not be made inadmissible pursuant to this Section"); see also Cal.Evid.Code 1160(a) (West 2011); Del.Code Ann. Title 10, Section 4318 (2011); Fla.Stat.Ann. 90.4026 (West 2011); Haw.Rev.Stat. Ann. 626-1, Rule 409.5 (West 2011); Idaho Code Ann. 9-207 (2011); Ind.CodeAnn. 34-43.5-1-4 and 34-43.5-1-5 (West 2011); Me.Rev.Stat.Ann. Title 24, Section 2907 (2011); Md.CodeAnn., Cts. & Jud. Proc. Section 10-920 (West 2011); Mass.Gen. Laws Ann. Ch. 233, 23D (West 2011); Mich.Comp.Laws Ann. 600.2155 (West 2011); Mo.Ann.Stat. 538.229 (West 2011); Neb.Rev.Stat. Ann. 27-1201 (West 2010); N.H.Rev.Stat.Ann. 507-E:4 (2011); Tenn.R.Evid. 409.1 (2010); Tex.Civ.Prac. & Rem. Code Ann. 18.061 (Vernon 2011); Va.Code Ann. 8.01-52.1. The Hawaii legislature explained its intent by commenting that its rule excluding expressions of sympathy while permitting the use of expressions of fault "favors expressions of sympathy as embodying desirable social interactions and contributing to civil settlements." Haw.Rev.Stat.Ann. 626-1 (West 2011), Commentary to Rule 409.5.

{¶ 7} On the other hand, eight of the states that have explicitly made the same distinction between expressions of sympathy and admissions of fault have chosen to exclude

both types of statements from evidence. Ariz.Rev.Stat.Ann. 12-2605 (2011); Colo.Rev.Stat.Ann. 13-25-135 (West 2011); Conn.Gen.Stat.Ann. 52-184d (West 2011); Ga. Code Ann. 24-3-37.1 (West 2010); S.C. Code Ann. 19-1-190 (2010); Utah Code Ann. 78B-3-422 (West 2010) (excluding from evidence the sequence and significance of events relating to the unanticipated outcome of medical care); Vt.Stat.Ann. Title. 12, 1912 (2011); Wash.Rev.Code Ann. 5.64.010 (2011). For instance, by adding the term "fault" to the same litany of sentiments found in Ohio's statute, Colorado's statute makes it clear that both admissions of fault and expressions of sympathy are inadmissible. In Colorado, "any and all statements * * * expressing apology, fault, sympathy, commiseration, condolence, compassion, or a general sense of benevolence which are made by a health care provider * * * to the alleged victim [or] a relative of the alleged victim * * * which relate to the discomfort, pain, suffering, injury, or death of the alleged victim as the result of the unanticipated outcome of medical care shall be inadmissible as evidence of an admission of liability or as evidence of an admission against interest." Colo.Rev.Stat. 13-25-135.

{¶ 8} Some states, like Ohio, have apology statutes that do not make a clear distinction between an alleged tortfeasor's statement of sympathy and one acknowledging fault. Five states have statutes with language nearly identical to R.C. 2317.43. These statutes have all been adopted within the past eight years and apparently have not been frequently litigated. This court has been unable to find a single judicial decision from any of those five states or from an Ohio court interpreting the relevant statutory language. See Mont.CodeAnn. 26-1-814 (2009); N.D.Cent.Code 31-04-12 (2009); R.C. 2317.43 (West 2011); Okla.Stat.Ann. Title 63, 1-1708.1H (West 2011); W.Va.Code Ann. 55-7-11a (West 2011); Wyo.Stat.Ann. 1-1-130 (2010).

{¶ 9} Under R.C. 2317.43(A), "all statements * * * expressing apology, sympathy, commiseration, condolence, compassion, or a general sense of benevolence * * * are inadmissible as evidence of an admission of liability or as evidence of an admission against interest." The parties appear to agree that statements of "sympathy, commiseration, condolence, compassion, or a general sense of benevolence" do not include an acknowledgment of fault. The question is whether the word "apology," as used in the statute, was intended to include an acknowledgment of fault in addition to an expression of sympathy, condolence, or compassion.

{¶ 10} As Knapic has pointed out, the word "apology" could reasonably include at least an implication of guilt or fault. On the other hand, "when hearing that someone's relative has died, it is common etiquette to say, 'I'm sorry,' but no one would take that as a confession of having caused the death." *Schaaf v. Kaufman*, 850 A.2d 655, 664 (Pa.Super.Ct.2004). Thus, looking to the rules of grammar and common usage, we note that the appearance of the term "apology" in R.C. 2317.43(A) creates some ambiguity. Reading the term in context with the litany of other sentiments to be excluded under the statute, however, leads us to believe that the General Assembly did not intend to include statements of fault within the statute's ambit of protection. The other five protected sentiments clearly do not convey any sense of fault or liability, indicating that the statute was intended to protect apologies devoid of any acknowledgment of fault.

{¶ 11} According to its stated intent, the Ohio General Assembly "enact[ed] section 2317.43 * * * to prohibit the use of a defendant's statement of sympathy as evidence in a medical liability action." Sub.H.B. No. 215, 150 Ohio Laws, Part III, 4146 ("H.B. 215"). From the time that H.B. 215 was first introduced in the 125th General Assembly, the "Bill Summary" indicated that it would "[p]rohibit the use of a defendant's statement of sympathy as evidence in

a medical liability action."  H.B. 215, as reported by H. Insurance (Ohio 2004).  As the bill was passed by both the House and Senate, the synopsis explained that it would "prohibit[ ] the use of any statement of sympathy offered by a health care provider  * * * as evidence of an admission of liability or an admission against interest[.] * * * For this purpose, a statement of sympathy includes any and all statements, affirmations, gestures, or conduct expressing apology, sympathy, commiseration, condolence, compassion, or a general sense of benevolence[.]"  H.B. 215.

{¶ 12} This explanation, which never changed as the bill traveled through the House and Senate, indicates that the intent was to forbid the use at trial of a medical professional's expression of "sympathy includ[ing] any and all statements * * * expressing apology."  Sub.H.B. 215.  The General Assembly's decision to define "a statement of sympathy" as including a "statement[ ] * * * expressing apology" demonstrates an intention to use the word "apology" to mean only a statement of condolence or sympathy, without including any expression of fault or liability.  Further, if the General Assembly had intended to prohibit the use of all statements of fault uttered by medical professionals to injured patients or their families, it could have done so by writing that all "admissions of liability" or "statements against interest" would be excluded, rather than limiting its description of the prohibited statements to those "expressing apology, sympathy, commiseration, condolence, compassion, or a general sense of benevolence."  R.C. 2317.43(A).

{¶ 13} Based upon the plain language of R.C. 2317.43, the intent was to protect pure expressions of apology, sympathy, commiseration, condolence, compassion, or a general sense of benevolence, but not admissions of fault.  This interpretation comports with the explanation of Ohio's General Assembly as well as the policy espoused by the majority of states that have adopted apology statutes with an explicit distinction between sympathy and fault.  A rule

protecting a physician's expression of sympathy, but not his admission of fault, from use at trial accomplishes the goal suggested by Knapic of helping to diminish the obvious detriment to the physician-patient relationship following a negative outcome of medical treatment. See, e.g., Haw.Rev.Stat.Ann. 626-1 (West 2011), Commentary to Rule 409.5. Under Ohio's statute, a physician may speak with a patient and/or a patient's family members and express his heartfelt sympathy for their pain following a negative outcome without risk of that expression of sympathy being used against him in court.

{¶ 14} According to the transcript, Mr. Davis testified that after the surgery, "Dr. Knapic * * * said the back surgery went okay but he nicked an artery, and he takes full responsibility and it was my fault." Later, the jury heard Mrs. Davis's adult daughter, Pamela Bickel, testify that after the surgery, Knapic said that "as far as the back surgery, everything went fine, but * * * when they rolled her over that her blood pressure started to drop and they did an ultrasound and s[aw] that she was bleeding, that at some point an artery was nicked * * *. And he said, 'It's my fault. I take full responsibility.' And he said, 'In my five years I've never had anything like this happen.'" The parties seem to agree that (1) during her deposition, Bickel testified that following the surgery, Knapic said he was sorry, and (2) the trial court excluded that part of the testimony at trial. The parties did not file Bickel's deposition, and there is no evidence in the record that Mr. Davis tried to submit evidence at trial that Knapic told family members that he was sorry.

{¶ 15} In this case, the testimony that the court admitted at trial did not include any expression of apology, sympathy, commiseration, condolence, compassion, or a general sense of benevolence. If there was testimony that Knapic said he was sorry following the surgery, that testimony was properly excluded from trial. R.C. 2317.43, however, does not require the

exclusion of admissions of liability or fault by a medical professional. Therefore, the trial court correctly admitted the testimony of Mrs. Davis's husband and daughter in this case. Knapic's first assignment of error is overruled.

THE AUTOPSY PHOTOGRAPH AND TESTIMONY

{¶ 16} Knapic and his practice group's second assignment of error is that the trial court incorrectly admitted an autopsy photograph and related testimony from the medical examiner in violation of Evid.R. 403(A). Mr. Davis argues that the photo is probative of the damages element of his wrongful-death claim and that the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice.

{¶ 17} Under Evid.R 403(A), "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." In applying Evid.R 403(A), a trial court must, "in its discretion, weigh the probative value of particular evidence against the danger that its admission will cause unfair prejudice." *State v. Hoffmeyer*, 9th Dist. No. 23712, 2008-Ohio-2311, at ¶ 30. Unless the trial court abused its discretion, this court will not reverse a trial court's weighing under Evid.R 403(A). Id.

{¶ 18} "Autopsy photos are inherently prejudicial when they depict gruesome, graphic wounds, but when offered to prove elements of the offense that [the proponent] has the burden of proving, they are usually not *unfairly* prejudicial." (Emphasis sic.) *State v. Wade*, 2d Dist. No. 21530, 2007-Ohio-1060, at ¶ 35; see also *State v. Whitfield*, 2d Dist. No. 22432, 2009-Ohio-293, at ¶ 120-127. In this case, Mr. Davis has argued that the photograph was probative of the mental-anguish element of damages because he saw his wife just before she died, looking the way she is depicted in the photograph. "In determining the amount of damages to be awarded,

[in a wrongful-death action] the jury * * * may consider all factors existing at the time of the decedent's death that are relevant to a determination of the damages suffered by reason of the wrongful death." R.C. 2125.02(A)(3)(b)(i). One element of such damages is the mental anguish that the death caused the surviving spouse. See R.C. 2125.02(B)(5). In this case, Mr. Davis had the burden to prove damages and, therefore, to offer some evidence of the mental anguish he suffered. He testified that while the hospital staff was still working on his wife, the doctors called him in to see her just before she died. He said that he saw "her eyeballs moving back and forth" and she "raised her hand" when he spoke to her. He also said that at that time, her abdomen was open, and he "saw her intestine lying on her stomach."

{¶ 19} According to the medical examiner, that is the state Mrs. Davis's body was in when the contested photograph was taken by the medical examiner's office. Over Knapic's objection, the medical examiner testified that when Mrs. Davis's body arrived in her office, it had a surgical incision "extend[ing] from the bottom of the chest bone down to the pubic bone." She was further permitted to testify that exhibit seven shows Mrs. Davis's small bowel extruded from the surgical incision and covered in a "plastic-like material [that] is stapled in place." The photograph shows Mrs. Davis's body with an open abdominal wound covered with clear plastic.

{¶ 20} Based on the Fifth District Court of Appeals' decision in *Hiner v. Nationwide Mut. Ins. Co.*, 5th Dist. No. 2005CA00034, 2005-Ohio-6660, at ¶ 55-56, Knapic argues that the photograph and testimony by the medical examiner should have been excluded because "circumstances of death * * * have little to no relevance to mental anguish." In *Hiner*, the Fifth District determined that the trial court had exercised proper discretion in excluding, under Evid.R. 403(A), evidence that the plaintiff's grandmother had been killed by a drunk driver. *Id.* at ¶ 56. Liability was not at issue in the case, however, so whether the tortfeasor was drunk

when he caused the car crash that killed the plaintiff's grandmother was wholly irrelevant to the damages issue in that case. Id.

{¶ 21} The same cannot be said of Mr. Davis's case. In this case, Knapic disputed liability, so the circumstances of Mrs. Davis's death were relevant. The photograph and medical testimony were offered to help the jury understand Mr. Davis's testimony about his last moments with his wife. The emotional trauma Mr. Davis experienced as a result of seeing his wife just moments before her death in the state he described is relevant evidence of the mental anguish he suffered as a result of her death. Because Mr. Davis had seen his wife in the same state, the medical examiner's testimony about how she looked and the autopsy photograph that Knapic found objectionable were probative of Mr. Davis's mental anguish. Upon review of the record, we conclude that the trial court exercised proper discretion under Evid.R. 403(A). Although the medical examiner's testimony and the gruesome nature of the photograph may have been prejudicial to Knapic's case, the question under Evid.R. 403(A) is whether the evidence was unfairly prejudicial, and it was not. Knapic's second assignment of error is overruled.

## JURY INSTRUCTION FORBIDDING SPECULATION REGARDING INSURANCE

{¶ 22} Knapic and his practice group's third assignment of error asserts that the trial court sua sponte offered a jury instruction on liability insurance that incorrectly injected extrajudicial evidence into the jury deliberations. In response, Mr. Davis argues that he requested and received an instruction that appropriately conveyed the law requiring jurors to consider only the evidence and to discourage them from speculating about the impact of insurance.

{¶ 23} The trial court gave the following instruction: "It is a common concern among jurors as to the existence or non-existence of insurance. Some jurors may wish to know if the

defendant has insurance that will pay any verdict the jurors may award to the plaintiff, or whether the defendant will have to pay such an award out of his own pocket. In your deliberations, you are not to consider or discuss the issue of whether either party has or had any kind of insurance. You are to decide the issues in this case based upon the evidence presented to you, not upon any considerations concerning insurance. Any presumption that a party has or does not have insurance is, first of all, not relevant; and, secondly, may be wrong. You are to resolve the issues, all the issues presented to you, based solely on the evidence that I have admitted and the law I've provided. I[n] no event may you add to or subtract from any award based on whether either party has or does not have insurance."

{¶ 24} After the evidence had closed, but prior to giving the jury instructions, the trial court heard arguments in support of Knapic's objection to the insurance instruction. Knapic argued that "the word 'insurance' ha[d] [not] even been uttered one time in the presence of the jury * * * [so it] is not even an issue in the case." The trial court overruled the objection, explaining that the instruction is "in common usage in this courthouse" and is based on "judges' experience in talking to jurors after verdicts" and in handling "questions coming from the jury." Knapic now argues that the trial court's jury instruction "effectively introduced extrajudicial evidence of insurance into the proceeding."

{¶ 25} In support of this assertion, Knapic cites *4262 Robbins Ave. Restaurant Co. v. Slanco* (Nov. 22, 1991), 11th Dist. No. 89-T-4274, 1991 WL 244648. In *Slanco*, however, the judge summarized for the jury the testimony of two absent witnesses, causing the Eleventh District Court of Appeals to reverse because the jury likely placed "additional emphasis" on the facts stated from the bench. Id. at *7. This case is not similar to *Slanco,* because the trial court in this case did not provide or restate any facts to the jury. The jury instruction quoted above

provides guidance about what the jury may consider (i.e., the evidence) versus what it must not consider (i.e., speculation about issues not raised by the evidence). The trial court's instruction did not introduce any evidence to the jury.

{¶ 26} Knapic also argues that the instruction was improper because "[i]njecting the possibility of liability insurance" into a personal-injury action is so inherently prejudicial as to require reversal. In support of this proposition, he cites cases analyzing the effect of improper testimony regarding liability insurance on juries. In this case, however, there was no improper testimony regarding insurance. Knapic also cites *Stehura v. Short* (1974), 39 Ohio App.2d 68, 70, for the proposition that Ohio courts zealously guard jurors' ears from statements tending to show that the defendant in a negligence action carried liability insurance. In *Stehura*, after the plaintiff's lawyer asked questions during voir dire regarding whether any prospective jurors were connected with insurance companies, the defendant's lawyer responded by telling the jury that "no other person, firm or corporation [is] involved in this case." Id. at 72. The trial court refused to give a requested curative instruction. The Eighth District Court of Appeals reversed because it "would be legally intolerable" to allow the defendant to convey the impression to the jury that his client was not insured, even if he avoids using the word "insurance." Id. This is because "[a] trial should be heard and determined by a jury of persons completely unbiased and uninfluenced by extrinsic considerations." Id. at 70, citing *Peart v. Jones* (1953), 159 Ohio St. 137, 140.

{¶ 27} What Knapic appears to believe is that the trial court caused prejudicial error by saying the word "insurance" to the jury when there had been no evidence taken on the issue whether either party had any type of insurance that could impact any verdict the jury may render in the case. This court is not aware of any authority for the proposition that the word "insurance"

may not be uttered in front of a jury in a medical-malpractice case, and Knapic has not cited any. Evid.R. 411 provides that "[e]vidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully." The rule also provides that it "does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership or control, if controverted, or bias or prejudice of a witness." Evid.R. 411. Thus, the word "insurance" and even the words "liability insurance" are admissible under certain circumstances in a negligence case. When, as in this case, evidence of insurance is not at issue in a negligence case, the Ohio State Bar Association's Jury Instructions Committee recommends the use of a jury instruction quite similar to the one given by the trial court in this case. Ohio State Bar Association Jury Instruction II. A. Insurance in Evidence. See the appendix attached to this opinion.

{¶ 28} The jury instruction did not imply that Knapic had liability insurance, but emphasized quite clearly that the jury must not speculate regarding whether he did have such insurance because no evidence had been heard on that issue. This instruction is not the substantive type that gives the jury the law regarding the impact of certain evidence thatthey have heard on the issues they must determine. On the contrary, this instruction is similar to those given by the trial court in this case that explained the jury's duties under the law. For instance, the trial court instructed the jurors that they had to accept the instructions and apply the law as it was given to them; that the evidence they were to consider did not include the lawyers' opening statements and closing arguments; and that they must not consider as evidence any suggestion included in a question that was not answered or contained in a statement ordered stricken from the record.

{¶ 29} The court instructed the jury that it must "decide the issues in this case based upon the evidence presented * * *, not upon any considerations concerning insurance." Thus, the court emphasized the fact that there had been no evidence regarding insurance admitted at trial and they must remain uninfluenced by extrinsic considerations. The court warned the jury not to make any assumptions regarding whether either party carried insurance and to "resolve the issues * * * based solely on the evidence * * * and the law * * * [without] * * * add[ing] to or subtract[ing] from any award based on whether either party has or does not have insurance." Seventeen years ago, the Supreme Court pointed out, "It is naïve to believe that today's jurors, bombarded for years with information about health care insurance, do not already assume in a malpractice case that the defendant doctor is covered by insurance." *Ede v. Atrium S. OB-GYN Inc*. (1994), 71 Ohio St.3d 124, 127. Because courts realize that jurors will be tempted to inappropriately speculate regarding the impact of insurance, it is not improper to include an instruction for the jurors that there was no evidence taken on that issue, and therefore, they must not allow speculation about that issue to enter their discussions.

{¶ 30} The court's instruction in this case did not imply that the defendant carried liability insurance, nor did it imply that he did not carry such insurance. See *Stehura v. Short* (1974), 39 Ohio App. 2d 68, 70. The instruction simply warned jurors in a medical-malpractice case not to assume, as courts have recognized that today's jurors tend to do, that the defendant doctor or the plaintiff carried any kind of insurance, or to allow such improper assumptions to affect the verdict. See *Ede v. Atrium S. OB-GYN Inc*. (1994), 71 Ohio St.3d 124, 127. The instruction conveyed an accurate statement of the jury's duty under the law and was neither ambiguous nor misleading. Knapic's third assignment of error is overruled.

CONCLUSION

**{¶ 31}** Knapic's first assignment of error is overruled because the trial court did not violate R.C. 2317.43. The statute was intended to protect pure expressions of apology, sympathy, commiseration, condolence, compassion, or a general sense of benevolence, without excluding from trial a medical professional's admission of fault for a claimed injury. His second assignment of error is overruled because the trial court exercised proper discretion under Evid.R. 403(A) in regard to the medical examiner's testimony and the single autopsy photograph admitted at trial. His third assignment of error is overruled because the contested jury instruction was not improper. The judgment of the Summit County Common Pleas Court is affirmed.

Judgment affirmed.

BELFANCE, P.J., and MOORE, J., concur.

_____

Appendix

**OSBA Jury Instructions**

**II. TORT LAW**

**A. GENERAL TORT LAW**

**INSURANCE IN EVIDENCE**

OPTION 1

You are not to consider or discuss whether either party has or had any kind of insurance. You are to decide the issues in this case based upon the evidence presented to you, not upon any considerations concerning insurance.

OPTION 2

It is a common concern among jurors as to the existence or non-existence of insurance. Some jurors may wish to know whether the plaintiff had insurance that paid any of her medical bills, or whether the plaintiff had to pay those bills "out of her own pocket."

Some jurors may wish to know if the defendant has insurance that will pay any verdict the jurors may award to the plaintiff, or whether the defendant will have to pay such an award "out of her own pocket."

In your deliberations, you are not to consider or discuss the issue of whether either party has or had any kind of

insurance. You are to decide the issues in this case based upon the evidence presented to you, not upon any considerations concerning insurance.

Any presumption that a party has or does not have insurance is, first of all, not relevant, and secondly, may be wrong.

You are to resolve all of the issues presented to you based solely upon the evidence that I have admitted and the law that I have provided . In no event may you add to or subtract from any award based on whether either party has or does not have insurance.

**Copyright - Ohio State Bar Association Jury Instructions Committee instructions are prepared by the OSBA Jury Instructions Committee independent of the Ohio Judicial Conference Ohio Jury Instructions Committee.**