JOHNSON et al., Appellants,

v.

RANDALL SMITH, INC., et al., Appellees.

[Cite as *Johnson v. Randall Smith, Inc.*, 196 Ohio App.3d 722, 2011-Ohio-6000.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

No. 2010–P–0050.

Decided Nov. 21, 2011.

Perantinides & Nolan Co., L.P.A., and Antonios P. Tsarouhas, for appellants.

Bonezzi, Switzer, Murphy, Polito & Hupp, Co., L.P.A., John S. Polito, and Bret C. Perry, for appellees.

THOMAS R. WRIGHT, Judge.

{¶ 1} This appeal is from a final order of the Portage County Court of Common Pleas. The trial court entered judgment in favor of appellees, Dr. Randall H. Smith and Randall H. Smith, M.D., Inc., on both claims in the underlying civil action. In seeking reversal of this determination, appellants, Jeanette and Harvey Johnson, challenge the propriety of the trial court's pretrial ruling on appellees' motion in limine.

{¶ 2} In April 2001, Dr. Smith performed a laparoscopic procedure on Jeanette Johnson's gall bladder. Certain complications arose during the course of the operation, and it became necessary for Smith to place a "t-tube" in the common duct of the gall bladder. As a result of the complications, Mrs. Johnson experienced a condition in which the opening of her common duct narrowed in size.

{¶ 3} Although Mrs. Johnson was released from the local hospital soon after the procedure, she had to be readmitted within three weeks for jaundice and an obstruction of a bile duct. Following further consultation, it was decided that Mrs. Johnson should be transferred to another hospital for an endoscopic procedure on her gall bladder. During the next 11 months, it was necessary for

her to undergo six separate procedures for the problems associated with her gall bladder.

{¶ 4} At the time Smith informed Mrs. Johnson of the need to transfer her to a new facility, she was in her hospital room with her daughter and a family friend. Upon learning that she had to have another procedure, Mrs. Johnson became very emotional. In response, Smith held Mrs. Johnson's hand and said to her that he took full responsibility for what had happened to her.

{¶ 5} Within 17 months of the initial procedure performed by Smith, Mrs. Johnson and her husband, appellants, filed a medical-malpractice case against the doctor and the corporate entity under which he conducted his practice. This first action remained pending for approximately four years, until September 2006, at which time it was voluntarily dismissed under Civ.R. 41(A). Ten months later, appellants refiled the action, asserting claims in negligence and loss of consortium. The primary allegation supporting both claims was that Smith negligently cut the common duct of Mrs. Johnson's gall bladder during the April 2001 procedure.

{¶ 6} After the parties engaged in considerable discovery, a jury trial on the final merits was scheduled for June 2010. Approximately ten days before trial, Smith and his corporate entity, appellees, submitted a motion in limine to prohibit the introduction of any evidence regarding the statement he made to Mrs. Johnson prior to her transfer to the second hospital. As the grounds for the motion, appellees contended that Smith's statement constituted an expression of sympathy under R.C. 2317.43, which provides that such statements are inadmissible as evidence of an admission of liability.

{¶ 7} Appellants filed two responses to appellees' motion in limine. In the first response, they argued that Smith's statement should not be viewed as an apology or a mere expression of sympathy, but rather an admission of negligence. In their second response, they maintained that R.C. 2317.43 was not applicable to Smith's statement, because the statute was enacted three years after their claims against appellees arose and after the disputed statement was made.

{¶ 8} Prior to the outset of the jury trial, the trial court held a separate hearing on the motion in limine, during which Mrs. Johnson, her daughter, and their friend testified as to the exact nature of the doctor's statement and the general context in which it had been made. Each witness quoted Smith as expressly stating that he would take full responsibility for the matter. At the close of this testimony, the trial court concluded that no evidence regarding the statement would be allowed at trial. As the basis for its oral ruling, the court first held that R.C. 2317.43 could be applied retroactively to Smith's statement because the statute was remedial in nature. Second, the court found that the statute mandated the exclusion of the statement because the doctor was only

trying to console Mrs. Johnson and was merely taking responsibility for the transfer.

{¶ 9} Once the trial court disposed of appellees' motion in limine, a two-day trial ensued. The jury ultimately returned a general verdict against appellants on their two claims. After the trial court rendered its final judgment on the jury verdict, appellants filed this appeal. In now limiting the scope of their arguments to the merits of the motion in limine, appellants have assigned the following as error:

{¶ 10} "1. The trial court committed prejudicial error in granting Defendants–Appellees' Motion in Limine prohibiting Plaintiffs–Appellants from introducing any testimony or evidence of Randall Smith, M.D.'s statement 'I take full responsibility' for the harm suffered by Mrs. Johnson based upon its opinion that R.C. 2317.43 excluded the statement.

{¶ 11} "2. The trial court committed prejudicial error by retroactively applying R.C. 2317.43 and granting Defendants–Appellees' Motion in Limine prohibiting Plaintiffs–Appellants from introducing any testimony or evidence of Randall Smith, M.D.'s statement 'I take full responsibility' for the harm suffered by Mrs. Johnson."

{¶ 12} Because the resolution of the second assignment is controlling, it will be addressed first. Under that assignment, appellants submit that the trial court should have denied appellees' motion in limine because the governing statute, R.C. 2317.43, could not be applied retroactively to the verbal statement he made in May 2001. In support, they maintain that in enacting the statute in 2004, the Ohio General Assembly did not include language indicating that retroactive application was intended.

{¶ 13} As was noted above, appellees' motion regarding Smith's statement was predicated entirely upon R.C. 2317.43, which covers the use of a defendant's prior statement of sympathy as evidence in a medical-malpractice action. Our review of the legislative history of this statute indicates that its present version originally took effect in September 2004, and that the Ohio Revised Code did not have a provision pertaining to its subject matter prior to that date. Throughout the entire six-year period in which R.C. 2317.43 has been in effect, subsection (A) of the statute has provided:

{¶ 14} "(A) In any civil action brought by an alleged victim of an unanticipated outcome of medical care or in any arbitration proceeding related to such a civil action, any and all statements, affirmations, gestures, or conduct expressing apology, sympathy, commiseration, condolence, compassion, or a general sense of benevolence that are made by a health care provider or an employee of a health care provider to the alleged victim, a relative of the alleged victim, or a

representative of the alleged victim, and that relate to the discomfort, pain, suffering, injury, or death of the alleged victim as the result of the unanticipated outcome of medical care are inadmissible as evidence of an admission of liability or as evidence of an admission against interest."

{¶ 15} In attempting to interpret the foregoing language as it relates to the issue of retroactivity, appellees state that the use of the phrase "in any civil action" is sufficient to indicate that the legislature meant for the evidentiary exclusion to apply to any action regardless of when the underlying claims arose. On the other hand, appellants contend that none of the quoted language is sufficiently specific to definitively demonstrate that a retroactive application was intended.

{¶ 16} Under Ohio law, a two-pronged test is employed to determine whether a section of the Revised Code can be applied retroactively. *Watkins v. Stevey,* 11th Dist. No. 2009–T–0022, 2009-Ohio-6854, 2009 WL 5064137, at ¶ 15. Under the first prong, the language of the provision is reviewed to see whether it contains an express statement that a retroactive application was intended; if the legislature did not include such a statement, it is presumed under R.C. 1.48 that only a prospective application was envisioned. *Brannon v. Austinburg Rehab. & Nursing Ctr.,* 190 Ohio App.3d 662, 2010-Ohio-5396, 943 N.E.2d 1062, at ¶ 29. If the statutory language does expressly provide for retroactive application, it must then be determined whether such an application is permissible under Section 28, Article II of the Ohio Constitution, which specifically forbids the state legislature from enacting any retroactive law. " 'A retroactive statute is unconstitutional if it retroactively impairs vested substantive rights, but not if it is merely remedial in nature.' " *Watkins,* 2009-Ohio-6854, 2009 WL 5064137, at ¶ 15, quoting *Hyle v. Porter,* 117 Ohio St.3d 165, 2008-Ohio-542, 882 N.E.2d 899, at ¶ 7.

{¶ 17} Recently, this court was required to employ the foregoing test in deciding whether a separate "medical malpractice" statute, R.C. 2305.113, could be retroactively applied. In *Brannon,* 190 Ohio App.3d 662, 2010-Ohio-5396, 943 N.E.2d 1062, we indicated at the outset of our legal discussion that the earlier version of the disputed statute had defined the term "medical claim" to encompass " 'any claim that is asserted in any civil action against a *physician, podiatrist,* or *hospital,* against any employee or agent of a physician, podiatrist, or hospital, or against a registered nurse or physical therapist, and that arises out of the medical diagnosis, care, or treatment of any person.' " (Emphasis sic.) Id. at ¶ 24, quoting former R.C. 2305.11(D)(3). Our opinion further noted that when the disputed statute had been both renumbered and amended in 2005, only the phrase "residential facilities" had been added to the quoted language. Id.

{¶ 18} In deciding whether the 2005 amendments could be applied retroactively, the *Brannon* court concluded that only the first prong of the retroactivity test

had to be considered to resolve the question. Specifically, the *Brannon* court held that because the wording of R.C. 2305.113 was essentially silent as to the extent of its application, the statute could be applied only prospectively in accordance with R.C. 1.48. Id. at ¶ 29. Pursuant to this analysis, it was unnecessary to determine if the statute was substantive or remedial, since the lack of any clear language dictating a retroactive application was controlling.

{¶ 19} As was stated previously, in contending that the language of R.C. 2317.43 is sufficient to establish a retroactive intent on the part of the Ohio General Assembly, appellees rely solely upon the presence of the phrase "in any civil action" in the statute. However, in *Brannon*, the existence of that identical phrase in the disputed language did not lead this court to conclude that the requisite intent for retroactivity had been shown. At best, the phrase in question merely creates a slight ambiguity concerning whether a retroactive application was intended. Pursuant to the foregoing precedent, an express statement of such an intent must be stated in the statutory language before the general presumption of prospective application can be overcome under R.C. 1.48.

{¶ 20} As the basis of its oral ruling on the motion in limine, the trial court found that R.C. 2317.43 could be applied retroactively because it was remedial in nature, not substantive. Even if the trial court's characterization of the statute were correct, it is simply irrelevant under the two-part test for retroactivity. Regardless of the nature of a statute, it can be applied only prospectively when the state legislature has failed to expressly provide for retroactive application. To this extent, the trial court's analysis of R.C. 2317.43 was erroneous.

{¶ 21} Under Ohio law, the legal ramifications of a person's conduct are predicated upon the law that was in effect when the conduct occurred. *Sines & Sons, Inc. v. Shell Oil Co.* (Sept. 18, 1998), 11th Dist. No. 96–G–2042, 1998 WL 683936. In the instant case, the evidence before the trial court readily established that Smith's statement to Mrs. Johnson was made in May 2001, more than two years before the present version of R.C. 2317.43 took effect. Thus, because that statement could not properly be excluded from evidence by relying solely on the statute, appellants' second assignment of error states a valid reason for reversing the trial court's ruling on the motion in limine.

■ {¶ 22} Under their first assignment, appellants contend that the trial court misapplied R.C. 2317.43 to the *specific facts* of the instant matter. In light of our holding under the second assignment that the statute could not be retroactively applied to *any* cases predating its enactment, the merits of the trial court's interpretation of the statute in this particular case and context have become moot. Accordingly, since there is no need to address the substance of the first assignment, the issue before this court becomes whether Smith's statement to Mrs. Johnson was admissible under the Ohio Rules of Evidence.

{¶ 23} As was previously discussed, each of the three witnesses who testified in the separate hearing regarding the motion in limine quoted Smith as saying that he would take "full responsibility" for the predicament that Mrs. Johnson was facing. As an initial point, this court emphasizes that the disputed statement was not hearsay. Evid.R. 801(D)(2)(a) provides that a statement is not considered hearsay if it was made by a party to the action and is being offered against that party. Under the facts of this case, both requirements were met; therefore, the general rule governing the exclusion of hearsay does not apply.

{¶ 24} Moreover, given that appellants sought to introduce the statement in the context of a civil action in which it was alleged that Smith acted negligently in performing the original procedure on Mrs. Johnson's gall bladder, the statement was readily relevant to the ultimate facts in the litigation. Therefore, as both sides aptly note in their briefs, the controlling point in this aspect of the analysis is whether under Evid.R. 403(A), the probative value of the statement in question was substantially outweighed by the danger of undue prejudice.

{¶ 25} As part of its oral ruling on appellees' motion in limine, the trial court found that Smith had made the statement in a specific attempt to show compassion to Mrs. Johnson at a time when she was especially upset. While a review of the transcript does demonstrate that one of the three witnesses did characterize Smith's basic act as an attempt to console Mrs. Johnson, the exact wording of his statement did not support the finding that he was only expressing his sympathy to her. That is, the use of the phrase "take full responsibility" can readily be interpreted to mean that he felt that he had been at fault in causing the problem with Mrs. Johnson's gall bladder.

{¶ 26} In conjunction with the foregoing point, this court further notes that in stating its ruling, the trial court found that the "responsibility" statement had been made solely in relation to Mrs. Johnson's transfer to another hospital. However, our review of the submitted testimony indicates that none of the three witnesses stated that Smith expressly referred to the transfer, as compared to the original procedure. Instead, the testimony of all three witnesses could be construed only to mean that the statement was made in a general sense, which could encompass the original procedure.

{¶ 27} In light of the general context in which the disputed statement was made, a reasonable juror could find that Smith was admitting that he was at fault. Under such circumstances, the jury must be permitted to hear all of the pertinent testimony and draw its own conclusion.

{¶ 28} Because Smith's "responsibility" statement could be construed as an admission against his interest regarding the question of his alleged negligence, its probative value in the underlying case would be considerable. Furthermore, since appellees and their counsel would have the opportunity to explain why

Smith made the statement, the probative value of the statement is not substantially outweighed by the danger of undue prejudice. Hence, this court holds that the testimony concerning Smith's statement must be admitted into evidence as part of the new trial upon remand.

{¶ 29} Consistent with the foregoing analysis, it is the judgment and order of this court that the judgment of the Portage County Court of Common Pleas is reversed, and the matter is hereby remanded for a new trial on the merits.

Judgment reversed
and cause remanded.

TRAPP, J., concurs.

CANNON, P.J., dissents.

TIMOTHY P. CANNON, Presiding Judge, dissenting.

{¶ 30} I respectfully dissent from the opinion of the majority.

{¶ 31} As stated by the majority, the legislature did not expressly provide for the retroactive application of the statute and, therefore, R.C. 2317.43 is to be applied prospectively. The question remains, however, whether the statute, which was not enacted at the time of Dr. Smith's conduct but was in effect at the time the complaint was filed, is applicable to the instant case. The majority focuses on when the statements of Smith were made. Thus, the majority concludes that since the conduct occurred in 2001, the statements could not be properly excluded under the statute. However, this interpretation does not give effect to the plain meaning of the statute. I find R.C. 2317.43 applicable to this case, as the Johnsons' civil action was not "brought" until 2007, after the effective date of the statute.

{¶ 32} As enacted, the language used by the legislature concerning the effective date for application of R.C. 2317.43 is "In any *civil action brought* by an alleged victim * * *." The statute's language is clear and unambiguous and, therefore, we apply the statute as written, giving effect to its plain meaning. "An 'action' is defined as 'a civil or criminal judicial proceeding.'" *McNeil v. Kingsley*, 178 Ohio App.3d 674, 2008-Ohio-5536, 899 N.E.2d 1054, at ¶ 49, quoting Black's Law Dictionary (8th Ed.Rev.2004) 31, 235. A "'cause of action' is defined as 'a group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in court from another person.'" Id. Further, case law has treated the word "brought" synonymously with the word "commenced." *Cover v. Hildebran* (1957), 103 Ohio App. 413, 415, 145 N.E.2d 850. (Under the Ohio Civil Rules, "a civil action is commenced by filing a complaint with the court, if service is obtained within one year from such filing upon a named defendant." Civ.R. 3(A).)

{¶ 33} Here, Smith performed surgery on Mrs. Johnson and subsequently made the statement at issue in 2001, giving rise to the Johnsons' cause of action. Although the Johnsons originally filed suit before the effective date of the statute, they voluntarily dismissed the complaint on September 11, 2006, after the effective date of the statute. The Johnsons refiled the complaint in 2007, within the time proscribed by the savings statute, R.C. 2305.19. Therefore, the Johnsons did not have an action, i.e., a civil judicial proceeding, until the complaint was filed in 2007. In 2007, R.C. 2317.13 was in effect and, consequently, applicable to this case.

{¶ 34} Although this case was originally "brought" in 2002, before the enactment of the statute, it was dismissed in 2006, after its effective date. R.C. 2317.43 applies to all "civil actions" "brought" or filed after the effective date in September 2004. This interpretation gives effect to the plain meaning of the statute. Applying the statute at issue to this case is further consistent with case law. "If there is no clear indication of retroactive application, then the statute may only apply to *cases which arise subsequent to its enactment*." (Emphasis added.) *Kiser v. Coleman* (1986), 28 Ohio St.3d 259, 262, 503 N.E.2d 753.

{¶ 35} The word "case" is defined as "a civil or criminal proceeding, action, suit or controversy at law or equity." Black's Law Dictionary (8th Ed.Rev.2004) 228. To conclude the majority's position under the facts of this case, the law would provide that the statute may be applied only to "causes of action" arising subsequent to its enactment. "Cases" and "causes of action" are two distinct concepts. Though the majority concludes that the "statute could not be retroactively applied to *any* cases predating its enactment," I believe this does not address the appropriate distinction between "cases" and "causes of action."

{¶ 36} Moreover, the comment made by Smith that he takes "full responsibility" is, under these circumstances, a statement to be excluded under the statute. As Mrs. Johnson's surgeon, Smith had no choice but to take responsibility. However, a bad result does not equate to medical negligence. Being responsible is not the same as admitting to legal liability.

{¶ 37} The instant case is inapposite to the case cited by the Johnsons in their notice of supplemental authority. In *Davis v. Wooster*, 193 Ohio App.3d 581, 2011-Ohio-3199, 952 N.E.2d 1216, the physician noted that the bad result was his "fault," which is not excluded under R.C. 2317.43.

{¶ 38} Although the trial court excluded the statement of Smith, it employed a different analysis. The trial court found that the statute could be applied retroactively, employing a substantive-versus-remedial analysis. The trial court determined that the "statements and gestures and actions" of Smith were covered under R.C. 2317.43.

{¶ 39} While I believe the statement of Smith was properly excluded, the application of the statute to this case was simply a prospective application based upon the clear direction stated therein.