2011 ME 129

**Robert LYLE et al.**

v.

**Donna Michele MANGAR.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Oct. 27, 2011.

Decided: Dec. 15, 2011.

Arthur H. Dumas, Esq., Arthur H. Dumas, P.A., Sanford, for appellants Robert and Sandra Lyle.

Scott D. Giese, Esq., Law Office of Scott D. Giese, Biddeford, for appellee Donna Michele Mangar.

Panel: SAUFLEY, C.J., and LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

SAUFLEY, C.J.

[¶ 1]  In this case, we are asked to interpret the statutes that govern security deposits on residential rental units, 14 M.R.S. §§ 6031–6039 (2010), for the purpose of answering two questions: (1) may a landlord proceed on a claim to recover unpaid rent without first returning a tenant's security deposit or providing a timely written statement of the reasons for retaining it, *see id.* § 6033, and (2) does the failure to provide such a written statement render the landlord's withholding of the deposit irrebuttably wrongful in every instance, thereby requiring the imposition of double damages, costs, and attorney fees, *see id.* § 6034.  We answer the first question in the affirmative and the second in the negative.

[¶ 2]  Robert and Sandra Lyle appeal from a judgment entered in the Superior

Court (York County, *Fritzsche, J.*) affirming small claims judgments entered by the District Court (Springvale, *Douglas, J.*). The District Court found in favor of the Lyles on their complaint to recover the amount of their security deposit and in favor of landlord Donna Michele Mangar on her complaint for unpaid rent and late fees. The Lyles contend that Mangar's competing small claims action should not have been permitted to proceed until she returned their security deposit and that they were entitled to double damages, attorney fees, and costs pursuant to 14 M.R.S. §§ 6033(3) and 6034(2) because Mangar wrongfully withheld the security deposit. We affirm the judgment.

## I. BACKGROUND

[¶ 3] The following facts, found by the District Court and affirmed by the Superior Court, are supported by competent evidence in the record. On December 1, 2008, the Lyles signed a "Monthly Rental Agreement" with Mangar to rent a house in Kennebunk. By the terms of the agreement, rent was set at $900 per month, due on the first day of each month, and a $900 security deposit was required. The lease contained the following provisions regarding the security deposit and termination of the lease:

18. **Security.** The security deposit in the amount of $900.00, shall secure the performance of Lessee's obligations hereunder. Lessor may, but shall not be obligated to, apply all or portions of said deposit on account of Lessee's obligations hereunder. Any balance remaining upon termination shall be returned, without interest, to Lessee. Lessee shall not have the right to apply the security deposit in payment of the last month's rent.

. . . .

20. **Deposit Refunds.** The balance of all deposits shall be refunded within two (2) weeks (21 days in California and Wisconsin) from date possession is delivered to Lessor, together with a statement showing any charges made against such deposits by Lessor.

21. **Termination.** This Agreement and the tenancy hereby granted may be terminated at any time by either party hereto by giving to the other party not less than one full month's prior notice in writing.

[¶ 4] The Lyles paid the $900 security deposit and then, with the exception of $300 withheld by the Lyles to cover certain costs, they paid rent through May 2009. Soon after making the May payment, they were told that Mangar was renting the home in violation of the terms of her mortgage, which they mistakenly believed entitled them to cease paying rent. They informed Mangar orally that they were going to move out and stop paying rent, and they asked Mangar to return their security deposit. The Lyles, however, continued to live in the house. Mangar did not return the security deposit, and she eventually commenced a forcible entry and detainer action against the Lyles. The Lyles stayed in the house until at least September 25, 2009, when the forcible entry and detainer action was dismissed with Mangar's consent.

[¶ 5] Approximately six months later, notwithstanding the Lyles' failure to pay rent during the final four months of their residency in Mangar's house, Robert Lyle sent a note to Mangar by certified mail requesting the return of the Lyles' last month's rent and the security deposit for a total of $1,800. Mangar did not respond.

[¶ 6] Sandra Lyle sent an additional note by certified mail on April 14, 2010, stating that the Lyles would commence a court action to seek double damages and costs if Mangar did not return their security deposit within seven days. Again, Mangar did not respond.

[¶ 7] On April 30, 2010, the Lyles commenced a small claims action in the District Court against Mangar seeking to recover their last month's rent and double damages for their security deposit. On August 2, 2010, Mangar filed a small claims action against the Lyles seeking damages for unpaid rent and late fees, among other damages.

[¶ 8] At a consolidated trial held on December 10, 2010, the Lyles indicated that they were no longer seeking to recover their last month's rent payment. Based on the testimony of the three parties and the documentary evidence, the District Court entered a judgment on Mangar's complaint awarding Mangar $3,700, representing four months of unpaid rent at $900 per month and $100 in late fees. On the Lyles' complaint, the court awarded judgment in the amount of $900, reflecting the amount of the Lyles' security deposit. The court denied the Lyles' request for double damages, attorney fees, and costs because it found that Mangar had not wrongfully retained the deposit but had instead retained it in good faith belief that she could do so to cover the Lyles' unpaid rent. *See* 14 M.R.S. § 6034.

[¶ 9] The Lyles appealed from these judgments to the Superior Court. The Superior Court affirmed the findings of the District Court but concluded, apparently relying on 14 M.R.S. § 6033(3), that Mangar was entitled to recover only $2,700 for unpaid rent due to the imposition of an additional $900 penalty in the amount that Mangar had withheld without written notice of her reasons. Taking into account the $900 awarded to the Lyles for their security deposit, the Superior Court's judgment rendered the Lyles responsible to Mangar for a net value of $1,900, including the $100 in late fees. In all other respects, the Superior Court affirmed the District Court's decision.

[¶ 10] The Lyles timely appealed. No cross-appeal was filed.

## II. DISCUSSION

[¶ 11] "When the Superior Court acts in its appellate capacity, we review the decision of the District Court directly for abuse of discretion, errors of law, or findings not supported by the evidence." *Tisdale v. Rawson*, 2003 ME 68, ¶ 12, 822 A.2d 1136. The interpretation of a statute is a question of law, which we review de novo. *See HL 1, LLC v. Riverwalk, LLC*, 2011 ME 29, ¶ 17, 15 A.3d 725. We will construe a statute based on its plain meaning in the context of the statutory scheme, and only if the statute is ambiguous will we look to extrinsic indicia of legislative intent such as relevant legislative history. *Id.*

[¶ 12] Relevant to the matter before us, the Legislature has established by statute that, if a written residential rental agreement is in place, a security deposit must be returned to a tenant "within the time, not to exceed 30 days, stated in the agreement." 14 M.R.S. § 6033(2)(A). If, however, "there is actual cause for retaining the security deposit or any portion of it, the landlord shall provide the tenant with a written statement itemizing the reasons for the retention of the security deposit or any portion of it." *Id.* § 6033(2). This written statement must also be provided "within the time, not to exceed 30 days, stated in the agreement." *Id.* § 6033(2)(A). The landlord must also provide, along with the written statement, "full payment of the difference between the security deposit and the amount retained." *Id.* § 6033(2). The cause for retaining the deposit may not include normal wear and tear. *Id.* § 6033(1). It may, however, include "nonpayment of rent." *Id.* § 6033(2).

[¶ 13] If a landlord retains the security deposit without providing the required

written statement within the time prescribed, the Legislature has mandated two specific consequences:

A. The landlord forfeits the right to retain any portion of the security deposit, *id.* § 6033(3); and

B. In any proceeding to collect the security deposit, which the tenant may commence after giving the landlord seven days' notice and still not receiving the deposit, the landlord is presumed to have wrongfully withheld it, *id.* § 6034(1). In such a proceeding,

1. The landlord bears the burden of proving that the withholding was not wrongful, *id.* § 6034(3); and

2. If the landlord fails to meet the burden of proof, the landlord will be held "liable for double the amount of that portion of the security deposit wrongfully withheld from the tenant, together with reasonable attorney's fees and court costs," *id.* § 6034(2).

[¶ 14] Mindful of the statutory requirements, we address the Lyles' arguments concerning each of the consequences of Mangar's failure to return the security deposit or provide written notice of her reasons for retaining it.

A. Forfeiture of the Right to Withhold the Security Deposit

[¶ 15] There is no factual dispute that Mangar failed to comply with 14 M.R.S. § 6033(2)(A), which mandates that a landlord either return the full security deposit within the time required by the lease or, within the same period, provide the tenant with a written statement itemizing all charges against the tenant's security deposit. Specifically, Mangar failed to provide written notice of her reasons for retaining the Lyles' security deposit within two weeks from the date that the Lyles delivered possession of the premises to her.

[¶ 16] Because Mangar failed to provide the statutorily required written statement of reasons for withholding the security deposit, she is subject to the penalty of forfeiture of the right to retain any portion of the security deposit, whether or not she had a good-faith reason for retaining it: "**Penalty.** If a landlord fails to provide a written statement or to return the security deposit within the time specified in subsection 2, the landlord shall forfeit his right to withhold any portion of the security deposit." 14 M.R.S. § 6033(3). The District Court therefore correctly determined that the Lyles were entitled to recover the full $900 amount of their security deposit.

[¶ 17] The Lyles also argue that, as part of the imposition of this penalty, a landlord may not sue the tenant to recover damages until *after* returning the withheld portion of the security deposit. Section 6033(3) does not, however, provide that the landlord forfeits the right to seek damages for breach of other terms of the rental agreement; rather, it provides that the landlord forfeits the "right to withhold any portion of the security deposit." *Id.* We do not read into the plain language of the statute any constraint on a landlord's right to bring a simultaneous action to enforce other terms of a rental agreement.[1]

---

1. Even if we were to treat the statute's silence as creating an ambiguity, *see Anastos v. Town of Brunswick,* 2011 ME 41, ¶ 9, 15 A.3d 1279, the legislative history of the statute demonstrates a limited purpose to provide an orderly process for the return of a security deposit. *See* L.D. 1813, Statement of Fact (108th Legis.1977) (stating that the bill "provides for an orderly procedure for the refund of these deposits"); *see also* 2 Legis. Rec. 1372–73, 1655 (1977) (discussing the purpose of preventing landlords from retaining tenants' security deposits without explanation or justification). Nothing in the legislative history suggests an intention to prevent a landlord's claim for breach of a rental agreement from proceeding

[¶ 18]   Because neither the security deposit statute nor the lease prohibited Mangar from bringing a separate claim for breach of other terms of the rental agreement, the District Court did not err in considering Mangar's small claims action simultaneously with the Lyles' claim for return of their security deposit. Indeed, the consolidation of the actions represented proper case management.

**B.   Presumption of Wrongful Retention**

[¶ 19]   As summarized above, a landlord's failure to explain in writing the reasons that the landlord is retaining a tenant's security deposit results in a second consequence: in a tenant's properly commenced action to recover the security deposit, the withholding of the deposit is *presumed* to have been wrongful:

> If the landlord fails to return the security deposit and provide the itemized statement within the time periods in section 6033, the tenant *shall give notice to* the landlord of the tenant's intention to bring a legal action no less than 7 days prior to commencing the action. If the landlord fails to return the entire security deposit within the 7-day period, it is *presumed* that the landlord is wrongfully retaining the security deposit.

14 M.R.S. § 6034(1) (emphasis added). By its nature, such a presumption is rebuttable: "In all civil actions and proceedings, except as otherwise provided by statute or by these rules, a presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence." M.R. Evid. 301. A presumption serves to shift the burden of going forward with evidence to the party against whom the presumption lies. *See Ventresco v. Bushey,* 159 Me. 241, 250, 191 A.2d 104, 108 (1963).

[¶ 20]   Thus, contrary to the Lyles' contentions, a residential landlord's retention of a security deposit without a written explanation does not irrebuttably establish wrongfulness. *See Robbins v. Foley,* 469 A.2d 840, 842 (Me.1983); *Karantza v. Salamone,* 435 A.2d 1384, 1386 (Me.1981). Rather, the presumption of wrongfulness may be overcome by proof that the landlord "had a good faith reason for the retention," *Robbins,* 469 A.2d at 842—that is, a "good faith belief of legal entitlement" to the funds, *Karantza,* 435 A.2d at 1386.

[¶ 21]   Here, the undisputed evidence demonstrated that the Lyles had lived in the rental house for several months without paying rent. Pursuant to the rental agreement, Mangar was legally entitled to the rental payments. *Cf.* 14 M.R.S. § 6033(2) (recognizing that a landlord may legitimately notify a tenant that the landlord is withholding a security deposit for nonpayment of rent). Thus, the District Court did not err in finding and concluding that, notwithstanding Mangar's failure to provide the required written statement, she met her burden of proof in rebutting the presumption of wrongful withholding by demonstrating a good-faith belief that she was entitled to retain the security deposit to cover unpaid rent. *See Karantza,* 435 A.2d at 1386; 14 M.R.S. § 6034(3). Accordingly, the District Court did not err in refusing to impose double damages, attorney fees, and costs pursuant to 14 M.R.S. § 6034(2).

**C.   Resulting Judgments**

[¶ 22]   The District Court correctly determined that the Lyles were entitled to recover $900—the amount of their security deposit—and that Mangar was entitled to recover $3,600 in unpaid rent plus $100 in late fees, which had the net effect of leav-

---

while the security deposit remains in the land-   lord's possession.

ing the Lyles responsible to Mangar for $2,800. The Superior Court incorrectly concluded on appeal that Mangar owed a $900 penalty in addition to forfeiting the right to withhold any portion of the $900 security deposit. *See* 14 M.R.S. § 6033(3) ("If a landlord fails to provide a written statement or to return the security deposit within the time specified in subsection 2, the landlord *shall forfeit his right to withhold* any portion of the security deposit." (emphasis added)). Because Mangar did not bring a cross-appeal to raise this issue, however, *see* M.R.App. P. 2(a)(1), (b)(3), (4), we will not disturb the judgment ultimately entered by the Superior Court, *see Costa v. Vogel,* 2001 ME 131, ¶ 1 n. 1, 777 A.2d 827, which has the net effect of rendering the Lyles liable to Mangar for $1,900.

The entry is:

Judgment affirmed.