MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:      2014 ME 41
Docket:        Cum-13-180
Submitted
 On Briefs:    December 13, 2013
Decided:       March 6, 2014

Panel:         SAUFLEY, C.J., and ALEXANDER, LEVY, MEAD, GORMAN, and JABAR, JJ.

## EDWINA JONES

v.

## COST MANAGEMENT, INC.

SAUFLEY, C.J.

[¶1]   We are asked here to decide whether the District Court (Portland, *Mulhern, J.*) erred in determining that Cost Management, Inc., a landlord, overcame the presumption that it wrongfully withheld a security deposit such that Edwina Jones, its tenant, is not entitled to court costs, double damages, and attorney fees under the wrongful-retention statute.  *See* 14 M.R.S. §§ 6033(2)-(3), 6034(1)-(2) (2013).   Jones appeals from a judgment in which, although the court found in her favor on her complaint to recover her security deposit, it found in favor of Cost Management on its counterclaim for the cost of heating oil not replaced by Jones and denied Jones's claims for court costs, double damages, and attorney fees.  *See id.*   Jones contends that she is entitled to recover under sections 6033(3) and 6034(2) because Cost Management wrongfully withheld her security deposit.  We affirm the judgment.

## I. BACKGROUND

[¶2] The following facts are supported by competent evidence in the record. On March 1, 2009, Edwina Jones and a roommate rented a residence in South Portland from landlord Dorothy Adams. The lease, which was to expire on February 28, 2010, specified a monthly rent amount of $1,350, a security deposit of $1,350, and a dog deposit of $100 for each of two dogs. Shortly after Jones and her roommate signed the lease, a third roommate moved into the property with them. As a result, Jones paid an additional $150 toward the security deposit, raising the security deposit amount to $1,500. In July of 2009, Adams sold the property to Cost Management and transferred the $1,500 security deposit to Jefery Walker, an agent of Cost Management.

[¶3] The lease indicated that the oil tank in the residence contained 270 gallons when the lease was signed and provided that failure to leave approximately 270 gallons of oil in the tank at the end of the tenancy would result in a charge being deducted from the security deposit. The lease provided that the tenants' security deposit would be returned on the following conditions:

a. You have vacated the residence.
b. You have paid the rent and other charges due under the Lease.
c. You have given the proper 30 day written notice of your leaving.
d. You have removed your personal property and have left the residence in good and clear order, with no damage to the property other than for normal wear and tear. Any expenses incurred by the landlord to dispose of tenants property will be paid by the tenant.

Finally, this section of the lease provided that if the landlord retained some or all of the security deposit, the landlord would notify the tenants of the reasons for its retention and/or return the security deposit within thirty days after the tenants vacated the property.

[¶4]  At the end of the lease term, Jones and her roommates vacated the property at approximately midnight on February 28, 2010.  Walker found that the oil tank was only a quarter full and notified William McGrath, Cost Management's owner.  McGrath calculated that it would cost $448 to fill the tank.

[¶5]  Sometime in March of 2010, Jones orally requested that Walker return the pet deposit and the full $1,500 security deposit.  When Walker contacted Adams—the property's prior owner—to inquire about the pet deposit, Adams produced a letter indicating that the pet deposit was nonrefundable.  Walker then told Jones that, although he would not send the pet deposit, he would, within thirty days of the end of her tenancy, send Jones the $1,500 deposit minus $448, the cost of filling the oil tank.

[¶6]  Despite Walker's assurance, Jones did not receive all or part of the deposit within thirty days after the end of her lease.  Consequently, Jones sent a letter dated May 7, 2010, to the Maine Real Estate Network, Cost Management's

4

rental agent, threatening legal action unless she received, within seven days, the deposit and a receipt proving that any subtracted amount was spent on heating oil.

[¶7]  Cost Management's representative testified that he mailed Jones a check for $1,052 on May 11, 2010.[1]  On June 8, 2010, Jones sent an email to McGrath stating, among other things, that she was seeking legal advice before accepting the $1,052.[2]  McGrath urged Jones to accept the $1,052, which he offered to send again if she had not received it the first time, and he reminded her that he had absorbed the cost of cleanup.[3]  The record contains no evidence that Jones requested a replacement check at that time.

[¶8]  Jones then sent McGrath a letter, dated August 19, 2010, declaring her intent to bring a legal action unless she received, within seven days, a check for $1,766.62 to cover the $1,500 deposit, the $200 dog deposit, and $66.62, the filing fee that Jones had paid when she erroneously commenced an action against the Maine Real Estate Network.  Jones again agreed that Cost Management could

---

[1]  According to the trial transcript, McGrath testified that he sent Jones a check for $1,052 on July 11, not May 11.  However, the audio recording of the trial reveals that McGrath actually testified that he mailed a check for $1,052 to Jones on "five-eleven," or May 11.  Thus, the date "July 11" is a transcription error, and should instead read "5-11" or "five-eleven."  Additionally, McGrath testified that he received a call on June 8, 2010, after sending a check for $1,052, further supporting the determination that McGrath testified that he mailed Jones a check on May 11.  Jones also testified that during a conversation on June 8, 2010, McGrath told her he had sent her a check for $1,052.

[2]  In May, Jones had filed a small claims action against the Maine Real Estate Network.  At small claims court, Jones learned that she had filed the claim against the wrong defendant.

[3]  In addition, at trial, McGrath indicated that Cost Management had also absorbed the cost of property disposal from the garage.

subtract from the deposit the amount it paid to fill the oil tank if it sent her a receipt.

[¶9]  McGrath was surprised by Jones's request, as he believed that he had already sent Jones her deposit on May 11, 2010.  Nonetheless, on September 2, 2010, McGrath sent Jones a check for $1,085 dated August 30, 2010.[4]  At around the same time, Jones retained an attorney, and she did not cash the check.  On January 25, 2011, Jones filed a complaint against Cost Management asserting that she was entitled to $1,500, plus statutory double damages, attorney fees,[5] interest and costs.  *See* 14 M.R.S. §§ 6033(3), 6034(2).  In its answer, Cost Management counterclaimed for the $448 it paid to fill the oil tank.

[¶10]  The court held a trial on January 7, 2013, and heard testimony from Jones, her two roommates, McGrath, and Walker.  In a judgment issued on January 25, 2013, the court awarded Jones $1,500, found for Cost Management on its counterclaim for $448, and denied Jones's claim for court costs, double damages, and attorney fees.  *See id.* § 6034(2).  The court held that the landlord had a good-faith basis for retaining $448 and that the landlord overcame the

---

[4]  The discrepancy between the amount owed, $1,052, and the $1,085 represented half of the $66 Jones paid to file the erroneous small claim complaint.

[5]  Prior to trial two years later, on January 4, 2013, Jones filed an affidavit itemizing $4,248 in attorney fees.

presumption of wrongful withholding for the remainder of the deposit. Thus, the court declined to award double damages, costs, or attorney fees.

[¶11] Finally, the court noted its conclusion that the security deposit statute does not support an award for attorney fees "where the landlord's **only** transgression is that it failed to give the required thirty-day notice." (Emphasis in original.) Jones timely appealed pursuant to 14 M.R.S. § 1901 (2013) and M.R. App. P. 2.

## II. DISCUSSION

[¶12] When a party appeals to the Law Court from a civil action in the District Court, we review the District Court's decision for abuse of discretion, errors of law, or findings not supported by the evidence. *See* 14 M.R.S. § 1901(1); *Lyle v. Mangar*, 2011 ME 129, ¶ 11, 36 A.3d 867. "The interpretation of a statute is a question of law, which we review de novo." *Id.* "We will construe a statute based on its plain meaning in the context of the statutory scheme, and only if the statute is ambiguous will we look to extrinsic indicia of legislative intent such as relevant legislative history." *Id.*

[¶13] Pursuant to Maine's security-deposit statute, if a written tenancy agreement governs the terms of a tenancy, the landlord must return the tenant's security deposit "within the time, not to exceed 30 days, stated in the agreement." 14 M.R.S. § 6033(2)(A). If, however, "there is actual cause for retaining the

security deposit or any portion of it, the landlord shall provide the tenant with a written statement itemizing the reasons for the retention of the security deposit or any portion of it." *Id.* § 6033(2). The landlord must provide this written statement "within the time, not to exceed 30 days, stated in the agreement." *Id.* § 6033(2)(A). The landlord must also provide, along with the written statement, "full payment of the difference between the security deposit and the amount retained." *Id.* § 6033(2) ("Reasons for which a landlord may retain [all or part of] the security deposit . . . include . . . the costs of storing and disposing of unclaimed property, nonpayment of rent and nonpayment of utility charges that the tenant was required to pay directly to the landlord.").

[¶14]  If the landlord retains the security deposit and fails to provide the required written statement within the time prescribed, the security-deposit statute provides two possible consequences:

1. The landlord forfeits the right to retain any portion of the security deposit, *id.* § 6033(3); and

2. In any proceeding to collect the security deposit, which the tenant may commence after giving the landlord written notice of the intent to file suit, the landlord is presumed to have wrongfully withheld the deposit, if the entire deposit was not provided to the tenant within seven days of that notice, *id.* § 6034(1). In such a proceeding,

   A. The landlord bears the burden of proving that the withholding was not wrongful, *id.* § 6034(3); and

B. If the landlord fails to meet the burden of proof, the landlord will be held "liable for double the amount of that portion of the security deposit wrongfully withheld from the tenant, together with reasonable attorney's fees and court costs," *id.* § 6034(2).

[¶15] We now address Jones's arguments concerning the consequences of Cost Management's delay in returning her deposit and failure to provide written notice of its reasons for retaining part of the deposit related to the cost of filling the oil tank.

A.    Forfeiture of the Right to Withhold the Security Deposit

[¶16] We first conclude that the court did not err in determining that the landlord forfeited its right to withhold any portion of Jones's security deposit because the landlord did not provide a written statement or return Jones's full security deposit within thirty days of the end of the lease. *See id.* § 6033(2), (3). Even assuming that Jones received the first check that the landlord's representative testified that he sent on May 11, 2010, the law required the landlord to return the deposit, or provide Jones with a statement, within thirty days of the termination of the lease, that is, by March 31, 2010. *See id.* § 6033(2)(A). Thus, pursuant to the penalty section of the security deposit statute, Jones is entitled to $1,500, the full security deposit amount. *See id.* § 6033(2)-(3).

[¶17] Regarding the offset of the $448, we have previously declined to "read into the plain language of the [wrongful-retention] statute any constraint on a

landlord's right to bring a simultaneous action to enforce other terms of a rental agreement." *Lyle*, 2011 ME 129, ¶ 17, 36 A.3d 867. The record contains sufficient evidence to support a finding for Cost Management on its counterclaim for the cost of replacing the heating oil, and Jones has never contested that amount. Therefore, we also affirm the court's judgment of $448 for Cost Management on its counterclaim. Allowing for offset, the result is that Jones is entitled to receive $1,052 from Cost Management.

B.     Wrongful Retention and Attorney Fees

[¶18]  We next address Jones's claim for court costs, double damages, and attorney fees based on her contention that Cost Management wrongfully retained a portion of her security deposit by failing to return the entire security deposit within seven days after she informed the landlord of her intention to bring a legal action. *See* 14 M.R.S. § 6034(1).

[¶19]  As explained above, a landlord's failure to return the deposit promptly may result in a second consequence. In a tenant's properly commenced action to recover the security deposit, the withholding of the deposit is presumed to have been wrongful:

> If the landlord fails to return the security deposit and provide the itemized statement within [thirty days of the end of the lease period in a written rental agreement], the tenant shall give notice to the landlord of the tenant's intention to bring a legal action no less than 7 days prior to commencing the action. If the landlord fails to return the

entire security deposit within the 7-day period, it is presumed that the landlord is wrongfully retaining the security deposit.

*Id*.

[¶20]  Because there was confusion regarding Cost Management's response to Jones's initial demand in May, the court apparently treated her second demand on August 19 as controlling.  We find no error in that determination on this record.  In August, Jones provided Cost Management with written notice of her intent to file an action, and Cost Management failed to return the security deposit within seven days, instead sending the check approximately twelve days after receiving her request.  Accordingly, the court correctly found that the facts gave rise to the presumption that the landlord wrongfully retained the security deposit.

[¶21]  After considering the evidence, however, the court ultimately concluded that the landlord overcame the presumption of wrongful withholding. *See Lyle*, 2011 ME 129, ¶ 20, 36 A.3d 867.  In so concluding, the court observed that the landlord's "representative . . . testified at trial that he mailed a check for $1,052 to [Jones] on May 11, 2010."  Although the court did not explicitly find as a matter of fact that the check was mailed, Jones did not request findings of fact and conclusions of law, *see* M.R. Civ. P. 52(a), to clarify the court's ambiguous statement about the May 11 check.  "If a party does not move for specific findings of fact, we assume 'that the trial court found all of the facts necessary to support its

decision.'" *Markley v. Semle*, 1998 ME 145, ¶ 4, 713 A.2d 945 (citing *Mariello v. Giguere*, 667 A.2d 588, 591 (Me. 1995)).

[¶22]  Thus, assuming that the court found that a check dated May 7, 2010 was mailed to Jones on May 11, 2010—well within seven days after Jones's first letter threatening legal action—the landlord could have believed that it had already satisfied its statutory obligation.  Indeed, the landlord's representative testified that the letter that Jones sent more than three months later surprised him.  Thus, the record provides a sufficient basis on which the court could have found that the landlord overcame the presumption that it wrongfully withheld the deposit, *see* 14 M.R.S. § 6034(1), (3); *Lyle*, 2011 ME 129, ¶ 20, 36 A.3d 867, that is, that the landlord had not intentionally withheld the security deposit.

[¶23]  The record also reflects that the landlord was in communication with Jones promptly after the end of her lease period; that Jones received the full amount that she was due less than two weeks after her letter of August 19, 2010; that she had access to the funds by September 3, 2010, which is long before she filed suit; and that the suit had generated more than $4,000 in attorney fees long after her deposit had been returned.  Hence, the record supports the court's determination that, considering the totality of the circumstances, the landlord overcame the presumption that it wrongfully withheld Jones's security deposit.

Therefore, we affirm the court's decision not to award court costs, double damages, and attorney fees.

The entry is:

Judgment affirmed.

---

**On the briefs:**

David J. Van Baars, Esq., Windham, for appellant Edwina Jones

Peter J. Cyr, Esq., Law Offices of Peter J. Cyr, Portland, for appellee Cost Management, Inc.

Portland District Court docket number CV-2011-99
FOR CLERK REFERENCE ONLY