MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:     2014 ME 77
Docket:       And-13-320
Argued:       April 7, 2014
Decided:      June 10, 2014

Panel:        SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, GORMAN, and JABAR, JJ.

WENDELL STROUT JR.

v.

CENTRAL MAINE MEDICAL CENTER

SILVER, J.

[¶1]  Central Maine Medical Center (CMMC) appeals from a judgment on a jury verdict entered in the Superior Court (Androscoggin County, *Clifford, J.*) in favor of Wendell Strout Jr., in his medical malpractice action against CMMC. CMMC argues that the court erred by admitting in evidence one sentence of a letter from CMMC's president to Strout because (1) the entire letter was inadmissible pursuant to 24 M.R.S. § 2907(2) (2013), (2) the statement was part of an offer to compromise, and (3) the statement's probative value was substantially outweighed by the danger of unfair prejudice.  We affirm the judgment.

## I. BACKGROUND

[¶2]  The following facts are taken from witness depositions included in the record,[1] and we view them in the light most favorable to the jury's verdict. *See Hickson v. Vescom Corp.*, 2014 ME 27, ¶ 2, 87 A.3d 704.  In April 2009, Strout sought treatment for abdominal pain at the CMMC emergency room. A CAT scan revealed a large lesion on Strout's liver.  Dr. Ian Reight, a surgeon at CMMC, evaluated the CAT scan and determined that Strout was most likely suffering from a cancer of hepatic, biliary, or pancreatic origin.

[¶3]  Several days later, Strout, accompanied by his wife, went to Dr. Reight's office for a follow-up visit.  Dr. Reight telephoned the pathologist who was in charge of testing a tissue sample taken from the lesion.  The pathologist informed Dr. Reight that he believed the lesion to be of hepatic or pancreatic origin and that he was sending it for additional testing; however, he also informed Dr. Reight that he needed more tissue to complete the assessment.

[¶4]  Dr. Reight then told Strout that, although he was still waiting for the final pathology results, he believed that Strout may be suffering from either hepatic or pancreatic cancer.  Dr. Reight informed Strout that, if this were the case, the cancer would be inoperable due to the size and location of the lesion.  Dr. Reight

---

[1]  Because this appeal concerns only the narrow issue of the admissibility of a portion of the letter, CMMC did not provide a trial transcript as part of the record on appeal.  *But see Greaton v. Greaton*, 2012 ME 17, ¶ 6, 36 A.3d 913 ("Merely providing documents that were admitted at trial will rarely suffice to establish an adequate record for our review.").

further informed Strout that even with chemotherapy, the average life expectancy of patients with each of these cancers was less than one year, and that Strout's life may be measured in months.

[¶5] Several weeks later, the test of Strout's tissue samples revealed that he did not suffer from hepatic or pancreatic cancer, but that he had B-cell non-Hodgkins lymphoma, which has a five-year survival rate of eighty-five to ninety percent. Strout sent a complaint about Dr. Reight to Laird Covey, CMMC's president, in October 2009.

[¶6] Covey had overall responsibility for all aspects of operations at CMMC, including handling patient complaints, during this time. Covey and his staff followed CMMC's procedure for investigating complaints, and once that review was completed Covey signed a letter to Strout[2] addressing the complaint about Dr. Reight. The letter, dated December 28, 2009, stated, in relevant part:

> The President of the Central Maine Medical Group, Dr. Focht, was involved in this review as he bears responsibility for the care provided by all the doctors who are a part of the Central Maine Medical Family. This has been addressed directly with Dr. Reight by Dr. Focht and has also been brought to the attention of the Medical Director for our surgical practice, Dr. Gammaitoni. Dr. [Reight] was saddened to learn that this was so difficult for you and your family. As he shared his clinical thinking at the time it was very apparent to Dr. Focht that Dr. [Reight] truly did feel that you were dealing with a very aggressive Stage 4 cancer with a very low survival rate. He in no way wanted to harm either you or your wife but wanted you to have a full

---

[2] The letter was drafted by one of Covey's staff members.

4

> understanding of what he thought he would be helping you to deal with. The level of his concern can be seen in the fact that he shared his personal cell phone number with you. That being said, he realizes now that prior to sharing his clinical impressions with you, he needed to wait for the results of the biopsy to confirm what the cancer was. Dr. [Reight] is a very dedicated, caring provider; one of the ways to learn and grow as care providers is to have feedback, both positive and negative from the patients we serve. I know that he will also be sharing the wisdom he has gained from this experience with his colleagues in the practice.
>
> I have had Ms. Maurer work with Patient Financial Services to identify any outstanding balances related to care provided by Dr. [Reight] and have authorized that these balances as well as the balance for Dr. Bisbal's care be written off as a gesture of acknowledgement for the concern you brought to our attention.

[¶7] Strout filed a notice of claim against Dr. Reight in February 2011. The parties agreed to waive the prelitigation panel hearing, and in March 2012 Strout filed a complaint naming Dr. Reight as the defendant and seeking damages for emotional distress, lost income, and loss of enjoyment of life. By agreement of the parties, CMMC replaced Dr. Reight as the only named defendant.

[¶8] CMMC moved in limine to exclude from evidence Covey's letter to Strout, arguing that the entire letter was an expression of sympathy or benevolence, which must be excluded pursuant to 24 M.R.S. § 2907(2). CMMC also argued that the letter was inadmissible pursuant to M.R. Evid. 408(a) because it constituted an

offer to compromise, and that it should be excluded pursuant to M.R. Evid. 403.[3] At trial, the court admitted in evidence a redacted version of the letter. The body of the redacted version of the letter read, in its entirety: "That being said, he [Dr. Reight] realizes now that prior to sharing his clinical impressions with you, he needed to wait for the results of the biopsy to confirm what the cancer was."

[¶9] Following the trial, the jury returned a $200,000 verdict in Strout's favor. The court entered judgment on the verdict, and CMMC filed this appeal.

## II. DISCUSSION

A. The "Apology Statute"

[¶10] "The interpretation of a statute is a question of law, which we review de novo." *Jones v. Cost Mgmt., Inc.*, 2014 ME 41, ¶ 12, 88 A.3d 147 (quotation marks omitted). "We will construe a statute based on its plain meaning in the context of the statutory scheme, and only if the statute is ambiguous will we look to extrinsic indicia of legislative intent such as relevant legislative history." *Id.* (quotation marks omitted). "Statutes are ambiguous only if reasonably susceptible to different interpretations. . . ." *Town of China v. Althenn*, 2013 ME 107, ¶ 6, 82 A.3d 835.

---

[3] Additionally, CMMC argued that the letter should be excluded pursuant to M.R. Evid. 409, which addresses payment of medical expenses. CMMC has not raised this argument on appeal.

6

[¶11]  Title 24 M.R.S. § 2907(2) provides, in relevant part:

> In any civil action for professional negligence . . . any statement, affirmation, gesture or conduct expressing apology, sympathy, commiseration, condolence, compassion or a general sense of benevolence that is made by a health care practitioner or health care provider or an employee of a health care practitioner or health care provider to the alleged victim, a relative of the alleged victim or a representative of the alleged victim and that relates to the discomfort, pain, suffering, injury or death of the alleged victim as the result of the unanticipated outcome is inadmissible as evidence of an admission of liability or as evidence of an admission against interest.  Nothing in this section prohibits the admissibility of a statement of fault.

[¶12]  CMMC asserts that important policy considerations underlie Maine's apology statute and similar statutes in other jurisdictions, and that these policy considerations justify characterizing the statement contained in Covey's letter as a statement of sympathy or benevolence rather than as an admission of fault. However, the statute, by its plain language, makes a distinction between statements of fault and expressions of apology or benevolence.  Nothing in the language of the statute suggests that statements of fault are inadmissible if they are accompanied by expressions of apology or benevolence; on the contrary, it explicitly provides that "[n]othing in this section prohibits the admissibility of a statement of fault." *Id.*  Although the Legislature could have decided otherwise, it was clear in its policy decision: the placement of an admission of fault in an apology letter does not prevent that admission from being presented to the jury.  Because the statutory language is not ambiguous, we need not examine the legislative history to aid us in

interpreting the statute. *See Jones*, 2014 ME 41, ¶ 12, 88 A.3d 147. Instead, we give the language of the statute its plain meaning, *see id.*, and conclude that statements of fault are admissible, even when coupled with other statements that may be inadmissible. The court committed no error by admitting the portion of the letter that contained an admission of fault.

B.     Offer to Compromise

[¶13]  CMMC argues that, because part of the letter included a reference to the hospital "writing off" a portion of Strout's outstanding balance, the letter constituted an offer to compromise.

[¶14]  M.R. Evid. 408(a) provides, in relevant part, "Evidence of furnishing or offering or promising to furnish, or accepting or offering or promising to accept, a valuable consideration in compromise or attempting to compromise a claim is not admissible to prove liability for, invalidity of, or amount of the claim or any other claim." "The determination of whether the statement was a part of compromise negotiations is exclusively for the court under Rule 104." *Greenstreet v. Brown*, 623 A.2d 1270, 1272 (Me. 1993) (quotation marks omitted). Although we liberally construe the phrase "compromise negotiations," "[n]either an offer to compromise nor compromise negotiations may take place . . . in the absence of a dispute." *Id.* Where there is "no evidence that a dispute existed about the validity

of a claim or the amount claimed at the time of [the] admission, the trial court properly admit[s the] statement in evidence." *Id.*

[¶15]  Covey sent the letter to Strout in December 2009, long before Strout filed his notice of claim against CMMC in February 2011.  Because there is no evidence of any disputed claim in existence at the time of the admission, the court properly concluded that the statements contained in the letter were not made as part of a settlement negotiation or mediation.  *See id.*

C.    Unfair Prejudice

[¶16]  Finally, CMMC argues that permitting the jury to see one sentence of the letter out of context resulted in unfair prejudice and was misleading.  We review a court's decision whether to admit evidence pursuant to Rule 403 "to determine if it exceeds the bounds of the court's discretion."  *State v. Lipham*, 2006 ME 137, ¶ 9, 910 A.2d 388 (quotation marks omitted).  However, "in an appeal without a transcript, we will assume that the record supports the trial court's . . . discretionary rulings on evidence, procedure, and remedies made during the course of the proceeding."  *Clark v. Heald*, 2009 ME 111, ¶ 2, 983 A.2d 406; *see also Springer v. Springer*, 2009 ME 118, ¶ 2, 984 A.2d 828 ("When a party challenges a court's . . . exercise of discretion and a recording of the proceeding exists, an adequate appellate record must include a transcript of testimony taken at

the relevant proceeding or a [trial-court-approved] statement of the case agreed upon by the parties."); M.R. App. P. 5(b)(2).

[¶17]  Here, CMMC raised its objections to the admission of the letter during a pre-trial conference in chambers.  Although CMMC has provided us with a transcript of that discussion, it has not provided us with a transcript of the trial.  Accordingly, we are unable to assess the extent to which the letter may have been used to improperly influence the jury, if at all.

The entry is:

Judgment affirmed.

---

**On the briefs:**

Christopher D. Nyhan, Esq., and Elizabeth A. Campbell, Esq., Preti Flaherty, LLP, Portland, for appellant Central Maine Medical Center

Scott J. Lynch, Esq., Hornblower, Lynch, Rabasco & Van Dyke, P.A., Lewiston, for appellee Wendell Strout, Jr.

**At oral argument:**

Christopher D. Nyhan, Esq., for appellant Central Maine Medical Center

Scott J. Lynch, Esq., for appellee Wendell Stout, Jr.