IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR KENT COUNTY

JEAN F. HONEY,                                         :
                                                      :         C.A. No: K13C-05-018 RBY
_____Plaintiff,                             :
                                                      :
                                                      :
    v.                                                :
                                                      :
                                                      :
BAYHEALTH MEDICAL CENTER, INC., :
a Delaware corporation, and                           :
ERIC M. HITCHCOCK, D.O.,                              :
                                                      :
        Defendants.                                   :


Submitted: November 20, 2014
Decided: January 23, 2015


*Upon Consideration of Defendants' Motion in Limine to Exclude Evidence of
Bayhealth's or its agents' Medical Negligence*
**GRANTED IN PART and DENIED IN PART**

*Upon Consideration of Defendants' Motion in Limine to Preclude Conversations
Relating to an offer or Promise to Pay Medical Expenses*
**GRANTED**

*Upon Consideration of Defendants' Motion in Limine to Limit Testimony by
Ronald J. Bagner, M.D.*
**DENIED**

*Upon Consideration of Defendants' Motion in Limine to Preclude Postoperative
Conversations of Apology*
**GRANTED IN PART and DENIED IN PART**


**ORDER**

William D. Fletcher, Jr., Esquire, Schmittinger & Rodriguez, P.A., Dover, Delaware for Plaintiff.

James E. Drnec, Esquire, and Melony R. Anderson, Esquire, Balick & Balick, LLC, Wilmington, Delaware for Defendant Bayhealth Medical Center, Inc.

Bradley J. Goewert, Esquire, and Lorenza A. Wolhar, Esquire, Marshall Dennehey Warner Coleman & Goggin, Wilmington, Delaware for Defendant Eric M. Hitchcock, D.O.

Young, J.

## SUMMARY

Jean Honey ("Plaintiff") alleges she suffered both temporary and permanent injuries at the hands of Dr. Eric M. Hitchcock, D.O. ("Dr. Hitchcock"), while undergoing a procedure known as laparoscopic cholecystectomy. This surgery was performed at Bayhealth Medical Center, Inc.'s ("Bayhealth," and together with Hitchcock, "Defendants") facility in Milford, DE. Plaintiff filed a medical negligence suit against Dr. Hitchcock, and also against Bayhealth, under a theory of *respondeat superior*.

During the course of discovery, evidence was uncovered regarding Plaintiff's medical condition and medical expenses, during both the operative and post-operative periods. Defendants move to preclude any use of some of this evidence by their five motions in limine: 1) motion in limine to exclude evidence of Bayhealth's or its agents' medical negligence; 2) motion in limine to preclude evidence of medical expenses exceeding those paid by Medicare; 3) motion in limine to preclude conversations relating to an offer or promise to pay medical expenses; 4) motion in limine to limit testimony of Ronald J. Bagner, M.D.; and 5) motion in limine to preclude postoperative conversations of apology.

Defendants' first motion in limine concerns evidence obtained from the deposition testimonies of Plaintiff and Paul Plaisted, her son, which Defendants claim improperly allege direct negligence on the part of Bayhealth. As per Defendants, the claim against Bayhealth sounds in vicarious liability. The Court **GRANTS** Defendants' motion in part, and **DENIES** Defendants' motion in part. Only certain portions of these deposition testimonies *directly* assert negligence on the part of

3

Bayhealth. These identified sections are, thus, inadmissible. However, the remaining sections (which, for example, generally describe Plaintiff's condition while under the care of Bayhealth and its staff) are admissible.

The Court has, by letter dated January 6, 2015, instructed the parties to provide additional analysis and support regarding their respective positions on Defendants' second motion in limine. Until that time, the Court withholds its decision.

The parties are in agreement concerning Defendants' third motion in limine. The deposition testimonies recounting an alleged offer by Dr. Hitchcock, to pay for Plaintiff's medical care are inadmissible, pursuant to D.R.E. 409. Defendants' motion is, therefore, **GRANTED.**

The Court finds that the Defendants' briefing concerning their fourth motion in limine lacks sufficient support. Although Defendants claim that certain opinions espoused by Dr. Ronald Bagner, M.D. ("Dr. Bagner") in his deposition testimony were not properly disclosed to them, they do so without specific citations to the supposedly offending sections. As an impartial party, it is not the Court's role to formulate the Defendants' argument for them, by combing through Dr. Bagner's testimony, searching for opinions Plaintiff failed to disclose timely, prior to the deposition. The Court **DENIES** Defendants' motion.

Finally, the Court **GRANTS** in part, and **DENIES** in part, Defendants' fifth motion in limine. Defendants seek to exclude any use or reference to portions of Plaintiff's and her son's depositions, which reveal a claimed apology expressed by Dr. Hitchcock. Defendants cite to 10 *Del. Code* § 4318(b), also know as the "apology statute," which excludes from evidence manifestations of contrition, remorse, or

benevolence, on the part of allegedly negligent healthcare providers. Excepted from this statute, are direct admissions of fault. Given the lack of Delaware authority interpreting the apology statute, this Court follows the well-reasoned lead of extra-jurisdictional courts reviewing their own similarly worded statutes, in finding that within a larger apology, can be found admissions of fault. The identified purported statements of Dr. Hitchcock, constituting admissions of fault are, therefore, admissible, even if found in a broader expression of apology.

## FACTS AND PROCEDURES

On March 1, 2012, Plaintiff underwent a laparoscopic cholecystectomy at Bayhealth's Milford Memorial Hospital, performed by Dr. Hitchcock. Plaintiff alleges that the surgery resulted in a urinary bladder laceration, leading to further complications from an undetected post-operative intra-abdominal hemorrhage. Dr. Hitchcock's negligent conduct in performing the surgery, is purported to be the cause of Plaintiff's injuries. Plaintiff claims she suffered from immense pain and suffering, as well as having endured injuries to her gastrointestinal and urinary systems.

On May 16, 2013, Plaintiff filed a medical negligence action against Dr. Hitchcock and Bayhealth. Plaintiff's Complaint alleges $217,437.50 in damages stemming from Plaintiff's injuries, as well as additional medical expenses in the future. At the time of Plaintiff's surgery, she was enrolled in a Medical Advantage program administered by a third party, Bravo Health, Inc. ("Bravo Health"). Bravo Health is alleged to have covered the cost of these healthcare charges.

Since the filing of Plaintiff's suit, extensive discovery has taken place,

including the depositions of Plaintiff, her son, and Plaintiff's expert, Dr. Bagner. These testimonies revealed certain alleged factual circumstances in the operative and post-operative period, which form the bases of the motions presently before the Court. Significantly, the depositions detail certain purported conversations between Dr. Hitchcock, Plaintiff, and members of Plaintiff's family, regarding her medical condition.

## DISCUSSION

As noted, Defendants bring a total of five motions in limine seeking to exclude any use of or reference to certain evidence relating to Plaintiff's malpractice suit. The Court addresses each in turn.

## I. Motion to Exclude Evidence of Bayhealth's or its Agents' Medical Negligence

Defendants' first motion in limine concerns evidence obtained primarily from deposition testimony, which alleges medical negligence on the part of Bayhealth, or its agents other than Dr. Hitchcock ("other agents"), in treating the Plaintiff. In particular, Defendants object to the testimony of Plaintiff and of Plaintiff's son, Paul Plaisted, asserting negligence on the part of Bayhealth and of its agent, Dr. Harvey Lee.[1] Defendants contend that such evidence should be excluded, as Plaintiff's direct claim is solely against Dr. Hitchcock. Bayhealth is allegedly *vicariously* liable, not directly liable to Plaintiff. Defendants further aver that if Plaintiff wishes to add a direct claim of medical negligence against Bayhealth, or one of its other agents, she

---

[1] Plaintiff testified that Dr. Lee failed to diagnose her condition in a timely fashion, and her son testified that Bayhealth did not properly clean Plaintiff's room, leading to further medical complications. Furthermore, in Plaintiff's Answer to Defendants' Interrogatory No. 55, she alleges negligence on the part of both Bayhealth and its other agents.

must first meet the statutory requirements underlying a medical negligence claim. Specifically, Plaintiff's claims of medical negligence must be supported by expert testimony, pursuant to 18 *Del. Code* § 6853(e). Defendants allege that any claim against Bayhealth or its other agents, currently lacks such expert support. Alternatively, even if the allegations of negligence were to have proper statutory foundation, Defendants argue that any such evidence should be excluded as irrelevant, which would serve only to confuse the jury as to the issue of negligence.

Plaintiff does not dispute Defendants' assertion that she is pursuing a direct medical malpractice claim solely against Dr. Hitchcock. Instead, Plaintiff asserts that the testimonies of Plaintiff and of her son, regarding the actions of Bayhealth and its other agents, are admissible as relevant to Plaintiff's condition, following the alleged malpractice committed by Dr. Hitchcock. It is Plaintiff's position that this evidence does not serve to create Bayhealth's or its other agents' direct liability, but rather to exemplify the types of damages resulting from Dr. Hitchcock's negligence. That is not persuasive.

It is true that the threshold burden of proving relevancy is low: "[t]o be admissible, evidence must be relevant, meaning its has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[2] However, this broad definition of relevance is tempered by the exclusionary rule of evidence, recognizing that certain testimony might confuse the jury, unfairly prejudicing the

---

[2] *Slicer v. Hill*, 2012 WL 1435014, at *5 (Del. Super. Ct. Apr. 20, 2012) (internal citations omitted); *see also* D.R.E. 401.

party against whom it is offered.[3] Testimony by either the Plaintiff or her son that speaks to her medical condition following the procedure performed by Dr. Hitchcock, is relevant to the central issues in this case – specifically the extent of Plaintiff's damages. However, the precise testimonies to which Defendants cite are troublesome to this Court as they, in non-subtle terms, allege negligence on Bayhealth's and Dr. Lee's part.[4] These testimonies do more than simply portray Plaintiff's general condition, after the allegedly botched operation. As such, there is an acute possibility a jury would be confused by the use of the term "negligence" with respect to Bayhealth, and its other agents, found in the evidence at issue. If the Plaintiff, as she asserts, does limit her direct liability claim to Dr. Hitchcock, she must be sensitive to this possibility.

On the other hand, Defendants move to exclude all current and future testimony, or other evidence, concerning Plaintiff's treatment by Bayhealth or its other agents. This request is much too broad in its scope. While the specific evidence to which Defendants point, those portions of the testimonies directly alleging

---

[3] *See e.g.*, *Langelle v. Bell Helicopter Textron*, 2014 WL 5038142 at *12 (Del. Super. Ct. Oct. 6, 2014) ("the Court must exclude even relevant evidence when its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence") (internal citations omitted); *see also* D.R.E. 403.

[4] For example, Plaintiff's Answer to Interrogatory No. 55 plainly states: "Defendant Bayhealth's medical staff were negligent in their care of Plaintiff during her hospital stay at Milford Memorial Hospital by not timely cleaning her bed and room, and by almost administering incorrect medication, and by their failure to respond to complaints from Plaintiff and her family about the quality of her care."Defendant Bayhealth's Motion in Limine, dated November 5, 2014, at ¶ 3.

negligent medical treatment, do create too high a risk of jury confusion, to exclude all references to the care Plaintiff received from any agent other than Dr. Hitchcock, is over-inclusive. Defendants' motion is, therefore, **GRANTED** in part and **DENIED** in part. The specific portions of the testimonies referring to any *negligence* on the part of Bayhealth, or its other agents are excluded.[5] With respect to the portions that simply mention Plaintiff's condition, for example, the development of an abscess, or the mere fact that she was treated by Dr. Lee, the Defendants' motion is denied. Regarding Defendants' motion concerning all future testimony, this is likewise denied. The Court will not speculate as to the substance of future testimony. Defendants are free to bring up any further admissibility challenges as the testimonies occur.

## II. Defendants' Motion in Limine to Preclude Evidence of Medical Expenses Exceeding Those Paid by Medicare

The Court withholds its decision concerning Defendants' second motion in limine, pending the parties' response to this Court's Letter, dated January 6, 2015. The Court will issue its ruling on the second motion in limine, in due course.

## III. Defendants' Motion in Limine to Preclude Any Conversations Relating to an Offer or Promise to Pay Medical Expenses

Defendants root their third motion in limine in D.R.E. 409. In her response to Defendants' motion, Plaintiff has indicated that she is in agreement with their

---

[5] Specifically, Plaintiff's Answer to Interrogatory No. 55 is excluded in its entirety. Plaintiff's references or answers in the affirmative to the term "*negligence*" on the part of Bayhealth or Dr. Lee in her deposition testimony are also excluded.

contentions, and does not object. Defendants' motion is well taken. D.R.E. 409 is an exclusionary rule, denying the admissibility of evidence constituting an offer or promise to pay medical expenses.[6] By their motion, Defendants seek to exclude portions of Plaintiff's deposition testimony, in which she recounts an alleged conversation between Dr. Hitchcock and herself, wherein he allegedly considered paying for Plaintiff's medical bills. Such a statement, if made, would fall squarely within the territory of D.R.E. 409. Thus, the Court **GRANTS** Defendants' unopposed motion. Any evidence of an offer or promise made by Dr. Hitchcock, to cover the costs of Plaintiff's medical care, is inadmissible under D.R.E. 409.

## IV. Defendants' Motion in Limine to Limit the Testimony of Ronald J. Bagner, M.D.

Pursuant to their fourth motion in limine, Defendants move to preclude the admission of certain opinion testimony, arising from Dr. Bagner's deposition. Defendants take issue with statements made by Dr. Bagner concerning what is termed "additional injuries," allegedly caused by the procedure performed by Dr. Hitchcock.[7] It is Defendants' contention that these additional injuries, as the subject matter of Dr. Bagner's expert testimony, had not been revealed prior to the statements made in his deposition. Defendants aver that, as a prerequisite to admissibility, the content of an

---

[6] D.R.E. 409 provides in relevant part: "evidence of offering or promising to pay medical, hospital, or similar expenses occasioned by an injury is not admissible to prove liability for the injury."

[7] Defendants' Motion in Limine to Limit the Testimony by Ronald J. Bagner, M.D., at ¶ 2.

expert's opinion must be fully disclosed prior to trial.[8] Furthermore, according to Defendants, such disclosure is to be made prior to such expert's discovery deposition.[9] Having failed to make such revelations under the proper procedures, Defendants argue that Dr. Bagner's testimony, with regard to the additional injuries, is inadmissible.

Plaintiff responds to Defendants by listing various instances in which Plaintiff forewarned Defendants of the contents of Dr. Bagner's testimony in *general*. Notably, Plaintiff does not provide evidence that he disclosed Dr. Bagner's opinion, regarding the additional injuries Defendants are concerned with. Instead, Plaintiff gives examples of other instances in the discovery process where the allegation of these additional injuries was made.

However, Defendants fail to point to the specific portions of Dr. Bagner's testimony to which they object. Indeed, in footnote no. 2 to their motion, Defendants indicate that a copy of Dr. Bagner's deposition testimony, as well as citations to the offending opinions, will be provided at a later time. Although by letter dated November 17, 2014, Defendants attached a copy of the *entire* deposition transcript, they did not provide this Court with the promised citations. The Court is, therefore, left with the term "additional injuries," without any specific guidance as to where in Dr. Bagner's testimony such ailments are referred to. There is concern that, if this Court were to review the deposition transcript in its entirety, searching for what

---

[8] *Id*., at ¶ 3 (*citing Russell v. K-Mart Corp.*, 761 A.2d 1, 4 (Del. 2000)).

[9] *Id.,* ¶ 4 (*citing Sammons v. Doctors For Emergency Servs., P.A.*, 913 A.2d 519, 529 (Del. 2006)).

Defendants refer to as "additional injuries," the Court would cross the line of impartiality, and, in essence, formulate Defendants' argument for them. If Defendants wish this Court to consider their motion in limine, the allegedly offending opinions found in Dr. Bagner's testimony, must be pinpointed, and Defendants' position further developed. Defendants' present motion is, therefore, **DENIED**.

## V. Defendants' Motion in Limine to Preclude Post Operative Conversations of Apology

Defendants' final motion in limine brings into operation 10 *Del. Code* § 4318(b), a statute whose substance has led other jurisdictions to refer to their own similar statutes as "apology statute[s]."[10] Pursuant to 10 *Del. Code* § 4318(b), "any statement...made by a health care provider...that expresses apology, sympathy, compassion, condolence, or benevolence" in reference to the allegedly negligent medical outcome for which the provider is being sued, is inadmissible. The exception to this rule is the "admission of liability or fault" by the health care provider.[11]

The parties' dispute centers upon the deposition testimonies of Plaintiff and her son, which recount alleged remarks made by Dr. Hitchcock. According to these two testimonies, Dr. Hitchcock came to Plaintiff's bedside during the post-operative period to express his condolences. The disagreement between the parties concerns whether Dr. Hitchcock's supposed contrition constituted an apology, deemed inadmissible by the governing statute, or was rather an admission of fault or liability.

---

[10] *See Davis v. Wooster Othropaedics & Sports Med., Inc.*, 952 N.E.2d 1216 (Ohio Ct. App. 2011).

[11] 10 *Del. C*. § 4318(b).

The Court has been unable to find any Delaware case law interpreting this statute – in particular the distinction between what constitutes an "apology" and what constitutes "an admission of fault or liability." Moreover, this would appear to be a highly factually based, case-by-case determination. It has, therefore, been instructive to look beyond Delaware to other jurisdictions. In particular, this Court is guided by the reasoning of the *Davis v. Wooster Orthopaedics & Sports Med., Inc.* Court, in contemplating the apology-admission dichotomy.[12] The *Davis* Court was faced with a slightly different scenario, in that the Ohio statute in question, did not expressly except admissions of fault. However, in coming to the finding that the Ohio Legislature intended to except admissions, the *Davis* Court reviewed the similar "apology statutes" of 36 states (including Delaware), reasoning that the vast majority included express language to such effect.[13] Of great aid to this Court in the case at bar, is the *Davis* Court's review of the California "apology statute":

> [t]he portion of statements or benevolent gestures expressing sympathy or a general sense of benevolence relating to the pain...of a person...shall be inadmissible as evidence of an admission of liability in a civil action. *A statement of fault, which is part of, or in addition to, any of the above shall not be inadmissible...*[14]

The latter part of this analysis is of particular relevance to the testimonies highlighted by Defendants, as implicating 10 *Del. Code* § 4318(b). Much of what Plaintiff and her son testified to included statements by Dr. Hitchcock such as, "I am

---

[12] 952 N.E.2d at 1216.

[13] *Id.,* at 1219.

[14] *Id.* (emphasis added)(internal quotations omitted).

so sorry, would you please forgive me..." as well as, "I am so sorry [for] what I have done and, believe me, I will be here by her side to take her back to where she was before."[15] The Court finds such remarks to be more in line with an "apology," rather than an admission of fault.[16] However, Plaintiff's testimony further claims that Dr. Hitchcock allegedly stated that the "cut" he made was a "miscalculation."[17] In addition, her son alleges Dr. Hitchcock to have stated that he"made a mistake."[18] These statements, unlike the generalized contrition allegedly expressed by the previous statements, are more directly an admission of fault.[19] If accurate, Dr. Hitchcock admitted to making a "miscalculation" and a "mistake." Here, again, the *Davis* Court's guidance is helpful. As noted in *Davis*, within an ordinary statement of apology, such as the "I am so sorry [for] what I have done," referred to above, can be *"a statement of fault, which is part of, or in addition to"* broader contrition.[20] Such

---

[15] Defendants' Motion in Limine to Preclude Postoperative Conversations of Apology, at ¶ 3 (*citing* Exhibit A to Defendants' motion, at 50:22-224; 51:1-7).

[16] *See e.g.*, *Schaaf v. Kaufman*, 850 A.2d 655, 664 (Pa. Super. Ct. 2004) ("when hearing that someone's relative has died, it is common etiquette to say 'I'm sorry,' but no one would take that as a confession of having caused the death").

[17] *Id.*

[18] *Id.*, at ¶4 (*citing* Exhibit B to Defendants' motion, at 28:16-24; 29:1-24; 30:1-24).

[19] *See e.g., Lawrence v. Mountain Star Healthcare*, 320 P.3d 1037, 1049 (Utah Ct. App. 2014) (court analyzing healthcare provider's statements under a similar apology statute as the one found in Delaware held, "the statements that there had been an accident or complication and that 'we messed up' do not fall within the categories" of the apology statute as they are admissions of fault).

[20] *Davis*, 952 N.E.2d at 1219; *see also Strout v. Cent. Maine Med. Ctr.*, 94 A.3d 786, 789 (Me. 2014) (court analyzing Maine's apology statute, which is similarly worded to Delaware's,

is the Court's interpretation of Plaintiff's and her son's account of Dr. Hitchcock's remarks. The reference to a "miscalculation," and a "mistake," are – of accurate – direct admissions of fault, within a larger expression of apologetic angst.

The Court, therefore, **GRANTS** Defendants' motion in part, and **DENIES** Defendants' motion in part. Specifically, the references to a "miscalculation," and "mistake," are admissible as the exception to 10 *Del. Code* § 4318(b). Any of the other statements pinpointed by Defendants, for example "I am so sorry [for] what I have done" are inadmissible under 10 *Del. Code* § 4318(b).

## CONCLUSION

For the foregoing reasons this Court:

1) **GRANTS** in part, and **DENIES** in part, Defendants' motion in limine to exclude evidence of Bayhealth's or its agents' medical negligence;

2) Awaits further support from the parties concerning Defendants' motion in limine to preclude evidence of medical expenses exceeding those paid by Medicare;

3) **GRANTS** Defendants' unopposed motion in limine to preclude conversations relating to an offer or promise to pay medical expenses;

4) **DENIES** Defendants' motion in limine to limit testimony of Ronald J. Bagner, M.D.; and

5) **GRANTS** in part, and **DENIES** in part, Defendants' motion in limine to preclude postoperative conversations of apology.

---

reasoned "[n]othing in the language of the statute suggests that statements of fault are inadmissible if they are accompanied by expressions of apology or benevolence").

**IT IS SO ORDERED**.

/s/ Robert B. Young
J.

RBY/lmc
oc:    Prothonotary
cc:    Counsel
       Opinion Distribution
       File